**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

―――――――――――――――――――――――   :
                                       :
DAVID OPALINSKI  and JAMES McCABE,     :
on behalf of themselves and all others similarly :
situated,                              :
                                       :
              Plaintiffs,              :
                                       :
       vs.                             :      Civil Action No.:
                                       :      2:10-cv-02069-FSH -PS
ROBERT HALF INTERNATIONAL, INC.,       :
and ROBERT HALF CORPORATION,           :
                                       :
              Defendants.              :
―――――――――――――――――――――――   :

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION TO COMPEL ARBITRATION AND TO DISMISS**

## **TABLE OF CONTENTS**

I.  INTRODUCTION. ................................................................................................. 1

II.  STATEMENT OF FACTS AND BACKGROUND. ................................................. 8

    A.  PLAINTIFFS' CLAIMS. ........................................................................... 8

    B.  PRIOR LAWSUITS AGAINST ROBERT HALF. ..................................... 8

    C.  ROBERT HALF'S BELATED ATTEMPT TO INVOKE ARBITRATION. ........... 9

III.  ARGUMENT. ..................................................................................................... 12

    A.  NOTICE SHOULD ISSUE PRIOR TO ANY RULING ON ROBERT
        HALF'S MOTION TO COMPEL ARBITRATION. ............................... 12

    B.  ROBERT HALF HAS WAIVED ITS RIGHT TO SEEK
        ARBITRATION. ................................................................................. 17

    C.  ROBERT HALF'S ARBITRATION AGREEMENTS SHOULD NOT BE
        ENFORCED BECAUSE THEY PREVENT VINDICATION OF
        STATUTORY RIGHTS. ....................................................................... 21

III.  CONCLUSION. .................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

Ali v. Sugarland Petroleum, 2009 WL 5173508, *1 (S.D. Tex. 2009)..........................................17

AT&T Mobility v. Concepcion, 131 S.Ct. 1740 (Apr. 27, 2011).....................................................5

Booker v. Robert Half Int'l, Inc., 413 F.3d 77 (D.C. Cir. 2005) ...................................................22

Chen-Oster v. Goldman, Sachs & Co., 2011 WL 2671813, *1 (S.D.N.Y. Jul. 7, 2011)...............24

Correa v. Robert Half Int'l, Inc., Civ. A. No. 08-10263 (S.D.N.Y. filed Nov. 25, 2008)..............8, 13

D'Antuono v. Service Road Corp., 2011 WL 2175932, at *1 (D. Conn. May 25, 2011) ...................6

D'Antuono v. Service Road Corp., Civ. A. No. 11-00033, docket no. 62 (D.
    Conn. filed Jan. 6, 2011)........................................................................................7

Davis v. NovaStar Mortg., Inc., 408 F. Supp. 2d 811 (W.D. Mo. 2005)..................................4, 17

Defranco v. Robert Half Int'l, Inc., Civ. A. No. 08-00841 (M.D. Fla. filed May 28, 2008)...........8, 13

Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207 (3d Cir. 2007) ................................................5, 18

Garfinkel v. Morristown Obstetrics & Gynecology, Assocs., P.A., 168 N.J. 124 (2001).............15

Greene v. Robert Half Int'l, Inc., Civ. A. No. 05-03248 (N.D. Cal. filed Aug. 9, 2005)...............8, 13

Hoffman v. Sbarro, Inc., 982 F. Supp. 249 (S.D.N.Y. 1997) ...................................................12, 13

Hoffman-LaRoche v. Sperling, 493 U.S. 165 (1989) ....................................................................12

In re American Express Merchants' Litig., 634 F.3d 187 (2d Cir. Mar. 8, 2011) ........................23

In re American Express Merchants' Litig., 554 F.3d 300 (2d Cir. 2009)..........................6, 22, 23

Kanbar v. O'Melveny & Myers, 2011 WL 2940690, at *1 (N.D. Cal. Jul. 21, 2011) ..............6, 24

Kristian v. Comcast Corp., 446 F.3d 25 (1st Cir. 2006) ...........................................................6, 22

Lafitte v. Robert Half Int'l, Inc., Los Angeles Civ. A. No. 04-321317
    (Cal. Super. Sept. 18, 2006) .........................................................................................9

Nino v. Jewelry Exchange, Inc., 609 F.3d 191 (3d Cir. 2010) ....................................................18

O'Donnell v. Robert Half Int'l, Inc., 534 F. Supp. 2d 173 (D. Mass. 2008).................................2, 13

O'Donnell v. Robert Half Int'l, Inc., 724 F. Supp. 217 (D. Mass. 2010)...........................................10

PaineWebber Inc. v. Faragalli, 61 F.3d 1063 (3d Cir. 1995)..........................................................18

Pellegrino v. Robert Half Int'l, Inc., 104 Cal. Rptr. 3d 790 (Cal. App. 4 Dist. Jan. 28, 2010).............9

Pellegrino v. Robert Half Int'l, Inc., 2008 WL 5271124, *1 (Cal. Super., Feb. 8, 2008)...............9, 13

Presser v. Robert Half International, Inc., Civ. A. No. 09-02168
    (M.D. Fla. filed Dec. 28, 2009).............................................................................................9, 13

Ragone v. Atlantic Video at Manhattan Center, 595 F.3d 115 (2d Cir. 2010) ...............................7

Samuki v. Emily Fisher Charter School of Advanced Studies, 2007 WL 316449, *1
    (D.N.J. 2007)...........................................................................................................................15

Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp., 130 S.Ct. 1758 (2010) ........................................5

Sutherland v. Ernst & Young LLP, 768 F. Supp. 2d 547 (S.D.N.Y. Mar. 3, 2011).................6, 24

Villatoro v. Kim Son Restaurant, L.P., 286 F. Supp. 2d 811 (S.D. Tex. 2003) .......................4, 16

Washington v. CentraState Healtcare Systems, Inc., 2011 WL 1402765, at *1
    (D.N.J. Apr. 13, 2011)............................................................................................................15

Whittington v. Taco Bell of America, Inc., 2011 WL 1772401, *1 (D. Colo. 2011)...............4, 17

**Statutes**

29 U.S.C. §§ 256-57 ....................................................................................................................13

I.      **INTRODUCTION.**

This case was brought as a collective action to recover overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 216(b).  Plaintiffs here challenge an admitted national policy whereby Defendants Robert Half International, Inc., and the Robert Half Corporation (together, "Robert Half") classify their staffing workers as exempt from overtime.  In recent years, numerous cases around the country have been brought by these staffing workers challenging their misclassification as exempt employees, and to date (other than in California, where a state court has certified a class action and the California Court of Appeal has affirmed a verdict finding Robert Half staffing managers to be entitled to overtime), Robert Half has succeeded in avoiding notifying affected employees that this claim exists and that they may be entitled to overtime compensation. See infra at 8-9.  By keeping its employees in the dark about these cases, Robert Half has been able to continue classifying its staffing managers as exempt from overtime without ever facing a serious examination (other than in California) regarding the legality of its practices.

In effect, this case is a continuation of a series of cases seeking to bring Robert Half to task for its misclassification of its staffing managers as exempt.  As alleged in the Complaint, Robert Half utilizes staffing employees to sell its staffing services to companies and has consistently required these employees to work far in excess of 40 hours per week.  See Compl., ¶¶ 1, 13-21.  As found in the California case (under a state overtime law that is almost identical to the federal FLSA on this issue), these employees simply sell the services offered by the company and work within tightly controlled parameters in which they do not exercise discretion or independent judgment with respect to matters of significance.  They are thus not exempt under the administrative exemption to the FLSA, upon which Robert Half relies in failing to pay them overtime.

In the last case brought by Plaintiffs' counsel challenging Robert Half's misclassification of its staffing managers as exempt, Robert Half engaged in a fierce campaign lasting nearly two years to disqualify Plaintiffs' counsel from the case, which resulted in an appeal not being taken to review that court's decision denying conditional certification under § 216(b) (which was based in large part on there being little evidence at the time of other Robert Half staffing managers' "interest" in pursuing this claim). O'Donnell v. Robert Half Int'l, Inc., 534 F. Supp. 2d 173, 181 (D. Mass. 2008). Following that battle, this case was filed, more than a year ago, in April 2010, and from the outset it was clear that Plaintiffs intended to request that the Court issue notice to Robert Half staffing managers across the country regarding this claim and their right to opt into the case. Unlike O'Donnell, where Plaintiffs had not submitted evidence of any other staffing managers who wished to join the case, in this case nine Robert Half employees have already opted in from a variety of locations, including New Jersey, Florida, Illinois, Pennsylvania, and Massachusetts. See docket nos. 1, 27, 46.

However, Robert Half has succeeded in this case in forestalling Plaintiffs' pursuit of their conditional certification motion by waging another year-long battle, again over the question of whether Plaintiffs' lead counsel, Attorney Liss-Riordan, could represent the plaintiffs in this case (due to Robert Half's success in disqualifying her from the O'Donnell case, based on a "technical" conflict whereby her firm had hired an associate who previously, unremembered by the associate, had worked several hours on the case for the defendant).[1]

---

[1]     Robert Half strung this unsuccessful battle out for nearly a year by opposing Attorney Liss-Riordan's admission pro hac vice, then objecting to the magistrate's report recommending her admission, then seeking an emergency injunction from the District Court for Massachusetts to preclude her from pursuing this case on behalf of the plaintiffs, and then appealing, unsuccessfully, the denial of that injunction to the First Circuit Court of Appeals. It was thus only in July of this year that the plaintiffs were finally able to do what they had intended to do at the outset of this case: seek conditional certification and the opportunity to notify Robert Half's staffing workers across the country of their right to opt into this lawsuit under § 216(b).

Now, more than 16 months after first filing this case, Plaintiffs at last were able to submit their conditional certification motion.  Leading up to the filing of the motion, the parties argued over whether discovery would be permitted before the Court heard the motion.  See Correspondence dated April 7, 2011, attached as "Exhibit 1"; Joint Discovery Plans, attached as "Exhibit 2."[2]  In that debate, Robert Half took the position that it should be entitled to depose the plaintiffs prior to their filing their conditional certification motion, and Plaintiffs took the position that discovery should commence in an FLSA collective action suit only after notices have been issued and potential plaintiffs have been given the opportunity to opt into the case.[3]

However, following that dispute, Robert Half came up with a new idea, and for the first time decided that it would move to compel enforcement of its mandatory employee arbitration agreement, which it had never raised, or even mentioned to the plaintiffs or their counsel, before.  Based on recent Supreme Court cases, it is clear that Robert Half simply decided that its arbitration agreement was the best chance it now had to prevent its employees from ever finding out about this case, and to prevent the company from ever having to face any serious inquiry into the consequences of its national policy of classifying its staffing managers as exempt employees.

The Court should not countenance this latest tactic by Robert Half to prevent its employees from learning about this issue and allowing them the opportunity to join in a challenge to their overtime-exempt classification.  By keeping its employees in the dark, the company has succeeded in

---

[2]        Exhibit 2 consists first of the draft joint discovery plan that Robert Half's counsel sent to Plaintiffs' counsel in April 2011.  Robert Half later revised its submissions in that joint plan and the filed final version that is also included in Exhibit 2.

[3]        In its draft discovery plan, Robert Half identified the dates it intended to depose the plaintiffs.  See Ex. 2 at ¶ 6(d).  Moreover, in the first of his letters to the Court leading up to the scheduling conference, Robert Half's counsel argued that "[t]here is limited, pre-certification discovery, including depositions of the Plaintiffs (and now affiants), that should occur before the Court rules on any motion to certify a collective action."  See Ex. 1 at 2.  In his second letter to the Court, Robert Half's counsel stated that it "respectfully request[ed] that the Court set a scheduling conference to establish both the content and timing of discovery and motion practice addressing whether collective action status is appropriate." See id. at 7.

never having its classification policy tested in any serious way (other than in California) and has been able to continue saving significant labor costs by classifying its staffing managers as exempt from overtime.

There are three ways that the Court can prevent the company from evading this challenge to an admitted national policy (which has already been found illegal in California):

(1)     The Court can rule that notices should first be issued to potential plaintiffs, and defer deciding the defendant's motion to compel arbitration until after the parties and Court have seen which employees opt in to the case.  As discussed in more detail below, <u>infra</u> at 16-17, a number of courts have recently adopted this approach, choosing to allow notice to issue under § 216(b) before addressing the enforceability of employers' arbitration agreements.  <u>See</u>, <u>e.g.</u>, <u>Whittington v. Taco Bell of America, Inc.</u>, 2011 WL 1772401, *5 (D. Colo. 2011); <u>Rafeedie v. L.L.C., Inc.</u>, Civ. A. No. 10-00743, order dated May 9, 2011 (W.D. Tex. filed Oct. 6, 2010); <u>Ali v. Sugarland Petroleum</u>, 2009 WL 5173508, *1 (S.D. Tex. 2009); <u>Davis v. NovaStar Mortg., Inc.</u>, 408 F. Supp. 2d 811, 818-19 (W.D. Mo. 2005); <u>Villatoro v. Kim Son Restaurant, L.P.</u>, 286 F. Supp. 2d 811 (S.D. Tex. 2003).[4]  After potential plaintiffs have been given the opportunity to opt in to the case, the Court could then address which (if any) of the employees have enforceable arbitration agreements and thus must pursue their claims in arbitration and which (if any) may pursue their claims in court (or alternatively, after notice issues, the plaintiffs may even agree to go to arbitration).

(2)     The Court can find that Robert Half has waived its right to compel arbitration in this matter.  <u>See</u> discussion, <u>infra</u> at 17-21.  This case was filed well over a year ago.  During that time, Robert Half never indicated that it would seek to compel arbitration.  It neither identified the plaintiffs' arbitration agreements in its initial disclosures made last year (<u>see</u> Initial Disclosures,

---

[4]     For the Court's convenience, Plaintiffs have assembled the unpublished decisions and orders cited throughout this brief in the attached Appendix.

attached as "Exhibit 3"), nor stated in its original joint discovery plan (filed last year, see docket no 24), that it would ever seek to move to compel arbitration.  To the contrary, up until May of this year it steadfastly insisted that it would pursue discovery in this case prior to any ruling on conditional certification, including deposing the named plaintiffs.  Significantly, it also spent nearly a year engaged in voluminous and ferocious motion practice attempting to prevent Attorney Liss-Riordan from obtaining admission pro hac vice in this case.  Now, claiming that the Supreme Court's recent decisions in AT&T Mobility v. Concepcion, 131 S.Ct. 1740 (Apr. 27, 2011), and Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp., 130 S.Ct. 1758 (2010), have "dramatically changed the legal landscape in cases like this," Robert Half seeks for the first time to compel arbitration.[5]  However, as set forth above, Robert Half has engaged in "pretrial activity inconsistent with an intent to arbitrate," Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 222 (3d Cir. 2007), by litigating aggressively in court and thus has waived the right to now try to avoid a collective action by a new tactic of compelling the plaintiffs to arbitration.[6]

      (3)     Alternatively, if the Court chooses to address the merits of Robert Half's motion now (rather than deferring the issue until after notice, or finding that the company has waived the right to seek arbitration in this case), the Court could find that the arbitration agreement is unenforceable,

---

[5]     Robert Half also appears to contend (through an assertion it supports with an affidavit from its counsel, see Defs.' Ex. 2 at ¶ 3), that it has already obtained a ruling that it has not waived its right to seek arbitration because Magistrate Judge Madeline Cox Arleo allowed it to file its present motion as a simultaneous cross-motion to Plaintiffs' motion for conditional certification.  However, as explained below, Magistrate Judge Arleo did *not* rule that Robert Half had not waived arbitration.  Her order regarding the filing of motions was *not* in any way an endorsement of its theory, or a rejection of Plaintiffs' contention that Robert Half has waived arbitration.  Rather, as made clear in the transcript of that hearing, see Hearing Tr. at 3-5, attached as "Exhibit 4," she simply stated that both sides should file their motions simultaneously and the Court would decide what to do.  The fact that Robert Half would try to persuade this Court that this issue had already been decided is unfortunately emblematic of its method of litigation in this case.

[6]     Though Plaintiffs dispute Robert Half's assertions regarding the breadth of the Supreme Court's rulings in Stolt-Nielsen and AT&T Mobility, if Robert Half were correct that these cases have created any significant change in the legal landscape over the past year, then Plaintiffs certainly have been prejudiced by Robert Half's delay in litigating the pro hac vice issue, and stalling conditional certification in this case, for the past 16 months.

since it would preclude vindication of statutory rights by the vast majority of Robert Half's staffing managers.  As discussed infra at 21-25, the Supreme Court in AT&T Mobility found that state law, in certain circumstances, cannot be used to invalidate arbitration agreements (including class action waivers) since such agreements are governed by the Federal Arbitration Act ("FAA"), which trumps state law.  However, nothing in the Supreme Court's decision in AT&T Mobility prevents courts from considering the validity of arbitration agreements under the FAA itself.  For example in In re American Express Merchants' Litigation, 554 F.3d 300, 311-20 (2d Cir. 2009), and Kristian v. Comcast Corp., 446 F.3d 25, 59-61 (1st Cir. 2006), the Second Circuit and the First Circuit applied *federal law* under the FAA to invalidate class action waivers in arbitration agreements which would preclude the vindication of statutory rights.  Applying those decisions, district courts have recently found arbitration agreements unenforceable in the employment context that would preclude class claims[7] (even where the dollar values of the claims are more significant than in consumer class actions) because of the impracticality of employees challenging employment violations on an individual basis.  See, e.g., Kanbar v. O'Melveny & Myers, 2011 WL 2940690, at *7-*8 (N.D. Cal. Jul. 21, 2011); Chen-Oster v. Goldman, Sachs & Co., --- F. Supp. 2d ---- , 2011 WL 1795297, at *9 (S.D.N.Y. Apr. 28, 2011); Sutherland v. Ernst & Young LLP, 768 F. Supp. 2d 547 (S.D.N.Y. Mar. 3, 2011).  In fact, a federal district court in Connecticut recently struggled with this issue in D'Antuono v. Service Road Corp., --- F. Supp. 2d ---- , 2011 WL 2175932, at *1 (D. Conn. May 25, 2011), and (after requiring the defendant to agree not to enforce several provisions of its arbitration agreement, including a cost-shifting provision and a shortening of the statute of limitations), the court issued a ruling compelling arbitration; however, recognizing that reasonable

---

[7]        Plaintiffs expect that Robert Half will argue (as it has indicated already in its submissions) that the plaintiffs would not be able to pursue a class action in arbitration because of the Supreme Court's rulings in Stolt-Nielsen, which prohibits class arbitration unless it was agreed to by the parties.

jurists could differ, in the wake of <u>AT&T Mobility</u>, on the question of whether an arbitration agreement that would preclude employees from pursuing a class action was enforceable, the court certified its order compelling arbitration for interlocutory appeal to the Second Circuit. <u>See</u> May 2, 2011, Hearing Transcript, attached as "Exhibit 5"; <u>D'Antuono v. Service Road Corp.</u>, Civ. A. No. 11-00033, order granting motion to certify question dated Jun. 7, 2011 (D. Conn. filed Jan. 6, 2011).

However, rather than wading now into this thicket of post-<u>AT&T Mobility</u> questions, the Court could postpone, or even avoid altogether, much of this debate by denying Robert Half's motion to compel arbitration under the first or second options noted above. In fact, if the Court were to allow notice to be issued first, so that Robert Half staffing managers would now have the opportunity to make an informed decision about whether or not to pursue this claim (whether here or in arbitration), the plaintiffs may very well agree at that time to go to arbitration. What Plaintiffs object to most strenuously is Robert Half's belated attempt to now use its arbitration provision to, once again, avoid the possibility of its staffing managers being notified of the existence of this claim and being given the opportunity to challenge their misclassification in any meaningful way (<u>i.e.</u>, in large numbers, rather than in small clusters of employees who Robert Half can then settle with confidentially, and continue misclassifying its staffing managers on a nationwide scale as exempt). If these employees were given notice, at last, of this claim, then it may very well be that their claims could be vindicated in arbitration (assuming that the company waives its attorney fee provision [which it admits is not enforceable, <u>see</u> Defs.' Mem. at 11-12], and truncated statute of limitations, as the defendant was required to do before the court would compel arbitration in the <u>D'Antuono</u> case under <u>Ragone v. Atlantic Video at Manhattan Center</u>, 595 F.3d 115 (2d Cir. 2010)). But granting Robert Half's motion to compel arbitration at this time, prior to issuing notice to employees who may want to pursue this claim, would be to allow

Robert Half to avoid, once again, having its overtime classification policy for its staffing managers challenged in any serious way.

## II.    STATEMENT OF FACTS AND BACKGROUND.

### A.    PLAINTIFFS' CLAIMS.

The plaintiffs in this case worked for Robert Half performing the duties of "staffing managers," which entails contacting clients to sell them Robert Half's staffing services and recruiting and placing job candidates in positions at client companies. Compl., ¶¶ 8-9; Answer, ¶¶ 8-9.  Robert Half is an international corporation that styles itself as the "world's leading specialized staffing service," meaning that it provides individuals looking for work with job placement. Compl., ¶¶ 11-12.  In order to provide those services, Robert Half employs thousands of staffing workers under a variety of titles, all of whom perform staffing manager duties. Id., ¶¶ 13, 15; Answer, ¶¶ 13, 15.  Robert Half classifies these staffing workers as exempt from overtime, and consequently does not pay them overtime compensation even though they routinely work more than 40 hours per week. Compl., ¶¶ 1, 14, 17.

### B.    PRIOR LAWSUITS AGAINST ROBERT HALF.

This is not the first lawsuit to be brought against Robert Half challenging its overtime compensation policies.  In fact, no fewer than seven such lawsuits have been filed against Robert Half in recent years.  See O'Donnell v. Robert Half Int'l, Inc., Civ. A. No. 04-12719 (D. Mass. filed Dec. 29, 2004); Lafitte v. Robert Half Int'l, Inc., Los Angeles Civ. A. No. 04-321317 (Cal. Super., 2004); Pellegrino v. Robert Half International, Inc., Orange Civ. A. No. 06-04518 (Cal. Super., 2006); Greene v. Robert Half Int'l, Inc., Civ. A. No. 05-03248 (N.D. Cal. filed Aug. 9, 2005); Correa v. Robert Half Int'l, Inc., Civ. A. No. 08-10263 (S.D.N.Y. filed Nov. 25, 2008); Defranco v. Robert Half Int'l, Inc., Civ. A. No. 08-00841 (M.D. Fla. filed May 28, 2008);  Presser v. Robert Half

International, Inc., Civ. A. No. 09-02168 (M.D. Fla. filed Dec. 28, 2009).  Robert Half settled four of

those cases on an individual basis, and a fifth was dismissed so that the plaintiffs could pursue their

claims in a related case.  See Presser, docket no. 32 (order approving settlement); Correa, docket no.

5 (stipulation of dismissal pursuant to settlement); Defrano, docket no. 13 (order approving

settlement); O'Donnell, docket no. 192 (order approving settlement); Greene, docket no. 100

(stipulation and order of dismissal).

　　　　Two of these suits—Lafitte and Pellegrino—were brought against Robert Half in California

alleging that it had misclassified its staffing managers as overtime-exempt under California law.

Lafitte resulted in the trial court certifying a California-wide class of staffing managers.  See Lafitte

v. Robert Half Int'l, Inc., Los Angeles Civ. A. No. 04-321317, order on class cert. (Cal. Super. Sept.

18, 2006).  Pellegrino was brought by six former staffing managers and went to trial, resulting in a

judgment in favor of the plaintiffs, and a finding that Robert Half misclassified the plaintiffs as

exempt from overtime.  See Pellegrino v. Robert Half Int'l, Inc., 2008 WL 5271124, at *1 (Cal.

Super., Feb. 8, 2008).  That decision was affirmed by the California Court of Appeal last year.  See

Pellegrino v. Robert Half Int'l, Inc., 104 Cal. Rptr. 3d 790 (Cal. App. 4 Dist. Jan. 28, 2010).

### C.　　　ROBERT HALF'S BELATED ATTEMPT TO INVOKE ARBITRATION.

　　　　This action was filed on April 23, 2010.  See docket no. 1.  During the pendency of this case,

through informal word of mouth, nine Robert Half staffing managers from five states have opted in

to pursue the FLSA claim that they were misclassified as exempt from overtime.  See docket nos. 1,

27, 46.  Shortly after Robert Half filed its Answer to the Complaint, Attorney Shannon Liss-Riordan,

who lives and practices in Massachusetts, sought admission pro hac vice with this Court.  See docket

no. 7. Robert Half opposed that motion in a 15-page filing supported by 13 exhibits totaling 135

pages.[8]  See docket no. 12.  The plaintiffs responded, and the matter was referred to Magistrate Judge

Madeline Cox Arleo, who set a scheduling conference and oral argument for July 29, 2010.  See

docket no. 23.  In anticipation of that hearing, the parties developed and filed a joint discovery plan

and exchanged initial disclosures.  See docket no. 24; Ex. 3.  Nowhere in that joint discovery plan

did Robert Half state that it intended to compel arbitration at any point in the case.  See docket no.

24.  To the contrary, it stated that it expected to take discovery from the plaintiffs, including

deposing the named plaintiffs and "any opt-in plaintiffs."  See docket no. 24 at ¶ 6(c), (d).

Similarly, Robert Half failed to disclose the existence of the named plaintiffs' arbitration

agreements in its initial disclosures.  See Ex. 3.

At the hearing on July 29, 2010, Magistrate Judge Arleo stated that she would grant

Attorney Liss-Riordan's admission pro hac vice but would not permit any action to be taken in the

case until she had issued her report and it had either been approved or rejected by Judge Susan

Wigenton.  See docket no. 25 at 36.  She issued that written report on October 14, 2010.  See

docket no. 30.  Two weeks later, Robert Half filed a set of 20-page objections to that report,

supported by 39 pages of exhibits.  See docket no. 32.  The plaintiffs responded and on March 18,

2011, following the First Circuit's rejection of Robert Half's appeal in Massachusetts, where it had

also sought to enjoin Attorney Liss-Riordan from pursuing this case, Judge Wigenton adopted

Magistrate Judge Arleo's report.  See docket no. 39.

Thereafter, the parties began corresponding for purposes of developing an amended joint

discovery plan.  In its draft proposals of the joint discovery plan, Robert Half asserted that it would

---

[8]      Robert Half also filed a motion with the District Court for Massachusetts seeking to enjoin Attorney Liss-
Riordan from representing not only these plaintiffs but also *any* plaintiffs in *any* state or federal wage action brought
against it in the future.  See O'Donnell v. Robert Half Int'l, Inc., 724 F. Supp. 2d 217, 219-20 (D. Mass. 2010).  That
motion was denied, see id., and Robert Half appealed to the First Circuit, which summarily denied the appeal on February
22, 2011, see docket no. 38.

take the depositions of each of the named plaintiffs as well as a specific opt-in plaintiff, and would

seek to do so prior to any ruling on conditional certification.  See Ex. 2.

On April 6, 2011 (three weeks after Judge Wigenton ruled that Attorney Liss-Riordan

could proceed as counsel in this case), the plaintiffs filed their motion for conditional certification.

See docket no. 40.  They withdrew that motion, however, after Robert Half wrote to the Court

(rather than merely contacting Plaintiffs' counsel directly) seeking sanctions as a result of plaintiffs

having filed their motion without prior leave of the Court (plaintiffs' counsel having inadvertently

forgotten that Magistrate Arleo had ordered that the parties not file any motions until a scheduling

conference had occurred and a joint discovery plan was in place).  See docket no. 41, 42.  In the

first of those letters to the Court, Robert Half specifically noted that conditional certification should

wait until after "limited, pre-certification discovery" had occurred, noting that it intended to take

the "depositions of the Plaintiffs (and now affiants)," and "should occur before the Court rules on

any motion to certify a collective action."  See Ex. 1 at 2.  In the second, Robert Half requested that

the Court hold a scheduling conference to "establish both the content and timing of discovery and

motion practice addressing whether collective action status is appropriate."  Id. at 7.

Subsequently, in May 2011, the parties held a telephone conference to finalize their joint

discovery plan.  In that conference, Robert Half informed Plaintiffs' counsel for the first time that

it would seek to compel arbitration and to dismiss this case.  See docket no. 45 at 1-4.  Plaintiffs'

counsel stated they would oppose that motion, and the parties filed their joint discovery plan on

May 18, 2011.  See id.  Two days later, a scheduling conference was held before Magistrate Judge

Arleo.  See docket entry dated May 20, 2011.  At that conference, Magistrate Arleo addressed the

parties' dispute regarding which issue should be addressed first, Plaintiffs' motion for notice, or

Defendant's motion to compel arbitration.  She ordered that the parties should file their motions on

the same day and make their arguments in their briefs regarding which issue should be decided

first. <u>See</u> Ex. 4 at 3-5. Specifically, Magistrate Judge Arleo ordered that:

> I'm not sure what the outcome would be on a motion for arbitration. You want to
> file your motion for a collective action first. They want to file a motion to compel
> arbitration first. So the logical compromise, to have both issues heard by the
> District Court, who's going to make the call, is have them as cross-motions,
> because that way, if you're right, she'll deny their motion and allow it to go
> forward. In the event that she grants arbitration but as you say, there's other folks
> that may want to pursue this, she could fashion a result that would accomplish that
> result if you ask for it. On the other hand, if they're right and the case should go to
> arbitration, she could very well just compel arbitration and hold the other issue and
> not reach it until arbitration's decided.

<u>Id.</u> at 3-4. Magistrate Judge Arleo specifically rejected Robert Half's argument that its motion to

compel arbitration should be decided first, stating:

> It's not happening. I'm going to let you file cross-motions. It's—it's— you know
> —let me tell you something. It's the fair way to do it. It's not fair to deprive her an
> opportunity to be heard because it's really—it's part of her opposition to your
> motion, saying alternatively it should be—it should be—the case should be
> certified.

<u>Id.</u> at 4-5. The parties filed their cross-motions on July 1, 2011. <u>See</u> docket nos. 54, 55.

## III.   ARGUMENT.

### A.   NOTICE SHOULD ISSUE PRIOR TO ANY RULING ON ROBERT HALF'S MOTION TO COMPEL ARBITRATION.

Notice is intended to issue early in the life of a collective action brought under the FLSA

case in order to establish the contours of the action and to further the broad remedial purpose of

the FLSA. <u>See</u> <u>Hoffman-LaRoche v. Sperling</u>, 493 U.S. 165, 171 (1989) (discussing importance

of early notice in collective actions in order to "ascertain[] the contours of the action at the

outset"); <u>Hoffman v. Sbarro, Inc.</u>, 982 F. Supp. 249, 263 (S.D.N.Y. 1997) (refusing to postpone

notice until after completion of discovery because the "FLSA's broad remedial intent favor[s]

early notice to potential plaintiffs"). Robert Half has worked tirelessly to avoid precisely that

result.  Though it has been sued on multiple occasions in multiple jurisdictions on precisely this

claim raised here,[9] it has to date managed to prevent notice from reaching its staffing workers

(other than in California), most often through reaching confidential individual settlements with

employees who have brought this claim.  See footnote 2, supra.[10]  In this case, and as discussed

above, Robert Half spent a year litigating the issue of whether Attorney Liss-Riordan could serve

as plaintiffs' counsel, both opposing her admission pro hac vice and seeking an injunction

against her from the District Court and Court of Appeals in her home state.  During that time,

untold numbers of staffing workers have had their claims severely truncated, or even waste away

entirely, since the statute of limitations in FLSA collective actions is not tolled as to each of

those individuals unless and until they file an opt-in consent forms with the Court (or unless the

Court grants equitable tolling, see Pls.' Mot. for Cond. Cert., docket no. 55-1 at 17-20).  29

U.S.C. §§ 256-57; Hoffman, 982 F. Supp. at 260 (potential collective action members' claims will

"die daily" until they are notified of the action and given a chance to opt-in).

---

[9]     O'Donnell v. Robert Half International, Inc., Civ. A. No. 04-12719 (D. Mass. filed Dec. 29, 2004), was
brought as a putative collective action under the FLSA, and ultimately settled on behalf of the two named plaintiffs
in June 2010 (following Robert Half's success in obtaining Attorney Liss-Riordan's disqualification from the case
based upon a "technical conflict of interest"); Lafitte v. Robert Half International, Inc., Los Angeles Civ. A. No. 04-
321317 (Cal. Super., 2004); Pellegrino, 2008 WL 5271124, at *1, aff'd, Pellegrino, 104 Cal. Rptr. 3d at 790;
Presser, Civ. A. No. 09-02168 (M.D. Fla. filed Dec. 28, 2009); Correa, Civ. A. No. 08-10263 (S.D.N.Y. filed Nov.
25, 2008); Defranco, Civ. A. No. 08-00841 (M.D. Fla. filed May 28, 2008); Greene, Civ. A. No. 05-03248 (N.D.
Cal. filed Aug. 9, 2005).

[10]     As discussed more thoroughly in plaintiffs' motion for conditional certification, the District Court in
O'Donnell denied notice because the named plaintiffs had not shown sufficient "interest" among those whom they
sought to notify, a theory that has been rejected by courts throughout the country, including in Massachusetts.  See,
e.g., Quinn v. Endo Pharm., Inc., Civ. A. No. 10-11230, order dated Jun. 1, 2011 (D. Mass. filed Jul. 22, 2010)
("[T]o require that the plaintiff show that potential class members—who have not yet been notified— wish to join
the class is to put the cart before the horse"); Butcher v. United Airlines, Inc., Civ. A. No. 09-11681, order dated
Jun. 15, 2011 (D. Mass. filed Oct. 6, 2009) (granting conditional certification based on affidavits attesting to policy
and practices at three locations).  Robert Half was ultimately able to prevent Attorney Liss-Riordan from appealing
that decision to the First Circuit by obtaining her disqualification from that case based on a "technical conflict of
interest," docket no. 39 at 5, which the magistrate judge recognized was an "admittedly close" question, O'Donnell
v. Robert Half Int'l, Inc., 641 F. Supp. 84, 89 (D. Mass. 2009).  Thus, Robert Half was able to prevent notice from
issuing in O'Donnell—a case that lasted approximately six years before it was settled confidentially on behalf of the
two named plaintiffs alone.

Given these circumstances, it is vital that this Court authorize that notice issue now, prior to addressing Robert Half's belated motion seeking to compel arbitration.  There is nothing time-sensitive about Robert Half's motion to compel arbitration—indeed, having waited 16 months to bring this motion, it can wait a little longer while notice is issued.  By contrast, issuing notice first will preserve the rights of those staffing workers to make an informed decision regarding whether to pursue the overtime claim asserted here.[11]  Once the opt-in period has closed, and the Court knows the contours of the action, and what employees wish to pursue this overtime claim, the Court could then turn to the issue of the enforceability of Robert Half's arbitration provision, and could decide which, if any, employees would be required to submit their claims to arbitration.

This procedure makes sense, not only because it would allow employees the opportunity they should have had long ago to make an informed decision as to whether to pursue this claim under the FLSA, but also because at that point the Court could determine which of these employees may be compelled to arbitration and which may not.  It appears that Robert Half has used different versions of its arbitration agreement over the past several years.  For example, the arbitration agreement signed by David Opalinski is different than the arbitration agreement signed by James McCabe.  See Defs.' Ex. 1 at 9, 17.  Mr. McCabe's arbitration agreement covers "[a]ny dispute or claim arising out of or relating to [his] employment, termination of employment or any provision of this Agreement, whether based on contract or tort or otherwise," but fails to encompass or identify any specific statutory claims.  His arbitration agreement is therefore invalid under Garfinkel v. Morristown Obstetrics & Gynecology, Associates, P.A., 168

---

[11]     In seeking to compel arbitration now, Robert Half hopes to avoid ever having notice issued to these workers, because it would certainly argue in arbitration that no class or collective action could be certified in light of the Supreme Court's ruling in Stolt-Nielsen.

N.J. 124 (2001), which forbids arbitration of statutory claims where the operative arbitration agreement is silent with respect to such claims.[12]  The same will likely be true for other staffing managers who signed similar arbitration agreements.

Moreover, issuing notice now would preserve the rights of those collective action members who may choose to opt-in to assert their rights.  This is a vital concern in the face of an employer's attempt to avoid facing challenges to its policies on a widespread basis, rather than an individual basis.  In Gentry v. Superior Court, 64 Cal. Rptr. 3d 773 (Cal. 2007), for example, the California Supreme Court rejected the defendant's argument that only the arbitration provision's effect on the individual named plaintiff must be considered, explaining:

> [O]ne of the advantages of class action litigation or arbitration is precisely the fact that the class representative spearheading the litigation is in a more advantageous position—e.g., is better informed, is less likely to be intimidated—than the class as a whole, and the class benefits from the representative's advantages.  Given this reality, . . . it makes little sense to focus only on whether the class

---

[12]      In Garfinkel, the New Jersey Supreme Court held that an arbitration agreement cannot be enforced against a plaintiff's statutory claims unless it explicitly states that it applies to statutory claims.  168 N.J. at 134-35.  In that case, the defendant sought to compel the plaintiff to pursue her statutory anti-discrimination claim in arbitration per her employment agreement, which governed "any controversy arising out of, or relating to, this Agreement or the breach thereof."  Id. at 128.  The Court deemed this language ineffectual for purposes of compelling the plaintiff to arbitrate her statutory claim, stating that while it "did not suggest that a party need . . . list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights . . . a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination," and "should . . . reflect the employee's general understanding of the type of claims included in the waiver, e.g., workplace discrimination claims."  Id. at 131-32 (internal quotations and citations omitted).  Because the arbitration provision in Garfinkel was "silent in respect of plaintiff's statutory remedies," the court held that it could not be enforced as to those claims, explaining that, "[t]o pass muster, a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination."  Id. at 135-36.  This decision has been adopted by the federal courts for this district in other cases, including those where, as here, the defendant seeks to compel arbitration of federal statutory claims.  For example, the District Court recently denied a motion to compel arbitration of federal and state statutory claims alleging race discrimination in Washington v. CentraState Healtcare Systems, Inc., 2011 WL 1402765, *1 (D.N.J. Apr. 13, 2011), where the plaintiff had signed an agreement stating that he would arbitrate "[a]ny controversy or claim arising out of or relating to this [a]greement or the breach thereof which cannot be resolved or concluded in a timely fashion by mediation . . . ."  Id. at *1.  Relying on Garfinkel, the Court held that this agreement was insufficient to compel arbitration of statutory claims because it made no mention of any statutory claims.  Similarly, in Samuki v. Emily Fisher Charter School of Advanced Studies, 2007 WL 316449, *1 (D.N.J. 2007), the defendant moved to compel the plaintiff to arbitrate his federal statutory claims for race discrimination, but the District Court denied that motion.  Relying on Garfinkel, the District Court held that the arbitration agreement "did not reflect a general understanding of the type of claims being waived" because it simply stated that the plaintiff agreed to arbitrate "all disputes" with the defendants and did not contain any reference to the plaintiff waiving his right to a trial by jury.  Id. at *1, *5.

representative himself or herself would be stymied in the pursuant of an
individual arbitration remedy . . . rather than considering as well the difficulties
from the class of employees affected by [the defendant's] allegedly unlawful
practices.

Id. at 787, n.7.  The District Court for Massachusetts applied similar reasoning in Skirchak v.

Dynamics Research Corp., Inc., noting that "[a]n arbitration agreement that eliminates the right

to a class-wide proceeding may have 'the substantial effect of contravening the principle behind

class action policies and chilling the effective protection of interest common to a group'," which

was "not only unfair to [defendant's] employees, but also removes any incentive for [defendant]

to avoid the type of conduct that might lead to class action litigation in the first instance."  432 F.

Supp. 2d 175, 180-181 (D. Mass. 2006), quoting Ingle v. Circuit City Stores, Inc., 328 F.3d

1165, 1176, n.13 (9th Cir. 2003), aff'd, Skirchak v. Dynamics Research Corp., Inc., 508 F.3d 49

(1st Cir. 2007).

Notably, a number of courts in recent years (including decisions issued after AT&T

Mobility) have recognized that it is the proper procedure to first issue notice in an FLSA case,

and then address the defendant's motion to compel arbitration. In Villatoro v. Kim Son

Restaurant, L.P., for example, the district court rejected the defendant's argument that its

arbitration agreements precluded conditional certification, explaining that its objection went to

the "merits of the action or the forum in which these claims ultimately should be resolved, not

whether notice to potential claimants should be given.  These arguments will be addressed in due

course once the identity of potential class members is determined."  286 F. Supp. 2d 811, 811

(S.D. Tex. 2003).  In Ali v. Sugarland Petroleum, the district court refused to consider the

defendants' argument that "notice . . . would be improper, since the arbitration policy [set forth

in their arbitration agreement] bars them from opting in on this suit," holding that it would rule

on the arbitration issue at the "conclusion of discovery, when it may properly analyze the validity

of the arbitration agreement."  2009 WL 5173508, at *4.  Just this year as well, in <u>Rafeedie v.</u> <u>L.L.C., Inc.</u>, the court ruled that the proper way of handling competing issues of notice and arbitrability was first to issue notice, then determine the enforceability of the arbitration agreements of any plaintiffs who opted in.  <u>See</u> Civ. A. No. 10-00743, order dated May 9, 2011. Another court recently reached the same conclusion in <u>Whittington v. Taco Bell of America,</u> <u>Inc.</u>, where it deferred its determination on arbitrability of putative class members' claims until after those class members received notice and an opportunity to be heard.  2011 WL 1772401, at *5.  Lastly, in <u>Davis v. NovaStar Mortg., Inc.</u>, 408 F. Supp. 2d 811, 818-19 (W.D. Mo. 2005), the court rejected the defendant's argument that "conditional certification would be improper . . . because most, if not all, of [defendant's] loan originators have signed arbitration agreements," holding that it would decide arbitration issue later in the case, "once the identity of the class members had been determined."

Simply put, the Court has within its discretion to address the notice issue before addressing Robert Half's belated motion to compel arbitration.  Given the goals of the FLSA, and its well-established procedure whereby similarly situated employees are to be given notice at the outset of a case of their opportunity to join the claim, the Court should order that notice be issued first.  Then the court could rule on the enforceability of the arbitration agreements for whichever employees opt in.  Alternatively, after notice is issued, the Court may even avoid addressing this question because, at that time, the plaintiffs may well choose to pursue their claims in arbitration.

### B.   ROBERT HALF HAS WAIVED ITS RIGHT TO SEEK ARBITRATION.

Alternatively, the Court should recognize that Robert Half has waived its right to compel arbitration.  In two weeks, this case will be exactly 16 months on the docket.  Now, in the

immediate wake of a Supreme Court decision that it deems helpful to its case—namely, AT&T Mobility—Robert Half seeks to compel arbitration.  Although "waiver is not to be lightly inferred," the Third Circuit has stated that it "will not hesitate to hold that the right to arbitrate has been waived where a sufficient showing of prejudice has been made by the party seeking to avoid arbitration."  Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 223 (3d Cir. 2007).  Indeed, "'prejudice is the touchstone for determining whether the right to arbitrate has been waived' by litigation conduct."  Id. at 222, quoting Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 925 (3d Cir. 1992).  Thus, the Third Circuit has "recognized that 'where a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing. . . arbitration may more easily show that its position has been compromised, i.e., prejudiced.'"  Id., quoting Hoxworth, 980 F.2d at 926.  Most often this means that waiver will be found where the parties have engaged in substantial merits-based briefing and discovery.  See PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1068-69 (3d Cir. 1995).   Contrary to Robert Half's assertions, however, those two factors are not dispositive.  Rather, the courts in this Circuit look to a list of nonexclusive factors, but ultimately focus their inquiry, as noted, on the prejudice borne by the non-moving party.  See Ehleiter, 482 F.3d at 223 (compiling "nonexclusive list of factors relevant to the prejudice inquiry," including the timeliness of the motion and the extent of non-merits motion practice); Nino v. Jewelry Exchange, Inc., 609 F.3d 191, 211-12 (3d Cir. 2010) ("In the waiver context, where prejudice to the non-movant is the key, an initial invocation of the defense of arbitration becomes less significant the longer and more actively a party litigates after having made that initial invocation without making any further mention of arbitration").

Here, Robert Half plainly never intended to seek arbitration until after the Supreme Court's decision in AT&T Mobility.  Rather, its intent was to pursue discovery and fight this case in court.  It failed to raise the issue of arbitration prior to May of this year, 13 months after the case was filed.[13]  It failed to note that the named plaintiffs had signed arbitration agreements in its initial disclosures.  It failed to mention that it would seek to compel arbitration in the parties' original joint discovery plan.  It insisted on taking depositions and discovery prior to conditional certification in its correspondence with this Court and with Plaintiffs' counsel.  It devoted nearly a year to burdensome and unnecessary motion practice in an attempt to prevent Attorney Liss-Riordan from representing these plaintiffs.  Then, presented with what it considers a favorable "sea change" in the law governing arbitration, it chose to shift gears.

Such gamesmanship is plainly prejudicial to the plaintiffs in this case (if, as Robert Half contends, there has in fact been any "sea change").  There is no reason why Robert Half could not have moved to compel arbitration earlier in this case, or even indicated that it intended to move to compel arbitration (such as in the initial joint discovery plan) before the parties spent a year of the Court's time litigating the question of whether Plaintiffs' lead counsel could appear pro hac vice in this case.  At bottom, Robert Half's decision to seek arbitration now is based on its belief that the winds of arbitration have changed in the wake of AT&T Mobility, and to some extent Stolt-Nielsen.[14]  However, neither of those cases establishes any novel issue of law that newly allows arbitration clauses such as those at issue here be enforced.  Robert Half has simply

---

[13]     Indeed, it is telling that Robert Half continued to insist that it would seek discovery and defend this case in court even up to and including April 7, 2011, see docket no. 41, only 20 days prior to the issuance of AT&T Mobility, but then immediately informed Plaintiffs' counsel of its intent to compel arbitration in the parties' telephone conference several days later.

[14]     Robert Half's invocation of Stolt-Nielsen as a basis for compelling arbitration at this late date is particularly inappropriate given that the Supreme Court issued its decision in Stolt-Nielsen on April 27, 2010, only four days after this case was filed.  Robert Half cannot, nor does it, offer any justification as to why it waited over a year to move to compel arbitration after Stolt-Nielsen was decided.

changed its mind about where it would like to handle this case since it perceives these cases as being tactically to its advantage.  Though Plaintiffs do not agree with Robert Half's interpretation of those cases, if Robert Half were in fact correct, then Plaintiffs would certainly have been prejudiced by Robert Half's delay over the last year before indicating its intention to move to compel arbitration.

Robert Half arguments as to why it has not waived arbitration are wholly meritless.  First, and most seriously, Robert Half misstates to this Court that Magistrate Judge Arleo already rejected Plaintiffs' argument that it had waived arbitration by permitting it to file a cross-motion to compel arbitration, and that Magistrate Judge Schwartz reached the same conclusion in a subsequent status conference.  See Defs.' Mem. at 5-6, 13-14.  This argument seriously mischaracterizes the record here.  Magistrate Judge Arleo ordered that both parties be permitted to file their motions simultaneously, and the District Court Judge would consider both sides' arguments, including whether Robert Half waived its right to compel arbitration, and whose motion should be addressed first.  Magistrate Judge Arleo never rejected Plaintiffs' argument that Robert Half had waived its right to arbitrate.  Rather, Magistrate Judge Arleo simply instructed the parties to file their motions—namely, Plaintiffs' motion for conditional certification and Robert Half's motion to compel arbitration—at the same time as a means of equitably resolving the parties' dispute as to which motion should be decided first.  See Ex. 4 at 3-5.  That decision in no way amounts to an implicit endorsement of Robert Half's claim that it has not waived arbitration, as Robert Half would have this Court believe.

Robert Half also argues that it has not waived its right to compel arbitration because no merits-based briefing or substantive discovery has yet occurred.  But that argument misses the point.  As discussed, the inquiry here is whether the plaintiffs are prejudiced by its conduct.

While prejudice will often be found where the parties have substantively briefed the issues in the case or engaged in considerable discovery, those are not the only circumstances warranting waiver.  Moreover, Robert Half's argument is circuitous: the only reason that the parties have not reached the merits of this case or engaged in substantial discovery is because Robert Half has spent nearly the entire life of this case attempting to prevent Attorney Liss-Riordan from even acting as Plaintiffs' counsel.  During that time the plaintiffs have been substantially prejudiced in that they have engaged in significant motion practice, filing briefs totaling hundreds of pages in length, including opposing an appeal to the First Circuit.  In light of that fact, Robert Half's claim that this case has "hardly begun" is disingenuous.  This case has only "hardly begun" because Robert Half made the strategic decision to fight Attorney Liss-Riordan's ability to pursue these claims for the plaintiffs.  Simply put, Robert Half should not now be permitted to compel arbitration while pretending that the last 16 months did not occur, since that delay was caused by its tactical choice of fighting Attorney Liss-Riordan's admission to practice before this Court.

## C.   ROBERT HALF'S ARBITRATION AGREEMENTS SHOULD NOT BE ENFORCED BECAUSE THEY PREVENT VINDICATION OF STATUTORY RIGHTS.

As discussed above, the Court can avoid altogether addressing the thorny aftermath of AT&T Mobility by addressing Plaintiffs' conditional certification motion first, or holding that Robert Half has, at this late date, waived its right to move to compel arbitration.  Indeed, another court that has recently waded into this issue has determined that the legal landscape is so unclear that it decided to certify the issue of the enforceability of an arbitration agreement that would

preclude class actions to the Second Circuit Court of Appeals for guidance.  See D'Antuono, Civ.

A. No. 11-00033, order granting motion to certify question dated Jun. 7, 2011.[15]

However, if the Court decides to address the issue of arbitrability prior to issuing notice

or finds that Robert Half has not waived arbitration, the Court should deny the motion to compel

arbitration because the arbitration agreement, if enforced, would preclude the plaintiffs and class

members from vindicating their statutory rights.[16]  If the named plaintiffs are compelled to

arbitration now, before notice issues, Robert Half will certainly argue in arbitration that their

claims can only be pursued on an individual basis, in light of Stolt-Nielsen (and, indeed, Robert

Half seeks a Court order compelling individual, not class, arbitration in this case).

Untouched by AT&T Mobility is the federal law of arbitrability, set forth in the Second

Circuit's American Express case and the First Circuit's Kristian v. Comcast case.  See American

Express, 554 F.3d at 311-20; Kristian, 446 F.3d at 59-61.  Both of those decisions recognized

that, unless plaintiffs were permitted to band together into class actions, certain types of claims

would not be brought.  The courts applied an analysis of whether plaintiffs could "vindicate their

---

[15]      Even so, Judge Kravitz in D'Antuono has agreed to consider Plaintiffs' conditional certification motion, even after issuing his ruling, and even after certifying the case for interlocutory appeal to the Second Circuit.  See D'Antuono, Civ. A. No. 11-00033, docket no. 79.

[16]      The arbitration agreements are also invalid because they are permeated with unenforceable provisions. Indeed, Robert Half is not shy about this fact, noting in its own papers that arbitration agreements contain provisions that drastically limit the statute of limitations on the plaintiffs' claims and prevent them from recovering attorneys' fees.  Robert Half asks the Court to sever any provisions the Court finds unenforceable from its arbitration agreements but otherwise compel arbitration.  Yet, as noted by Chief Justice Roberts when he was sitting on the D.C. Circuit Court of Appeals (indeed in another case involving Robert Half):

> If illegality pervades the arbitration agreement such that only a disintegrated fragment would remain after hacking away at the unenforceable parts . . . the judicial effort begins to look more like rewriting the contract than fulfilling the intent of the parties. . . .  Thus the more the employer overreaches, the less likely a court will be able to sever the provisions and enforce the clause.

Booker v. Robert Half Int'l, Inc., 413 F.3d 77, 84-85 (D.C. Cir. 2005).  Simply put, it is not the role of this Court to fashion an arbitration agreement that is valid and enforceable by eliminating invalid provisions.  Companies should not be encouraged to load up unconscionable terms into their arbitration agreements knowing that the courts will simply carve out any provisions they find unenforceable.  Instead, if the company has overreached, the Court should instead deem the entire agreement unenforceable.

22

statutory rights" in the absence of a class action.  Following those decisions, other courts have recognized that employment claims, which involve relatively low monetary damages (though much higher than the consumer claims at issue in American Express and the antitrust claims Kristian), are impractical for individual employees to pursue.  See, e.g., Kanbar, 2011 WL 2940690, at *7-*8; Goldman, Sachs & Co., 2011 WL 1795297, at *9; Ernst & Young LLP, 768 F. Supp. 2d 547.  Significantly, even if the named plaintiffs in a collective action had the motive and wherewithal to find counsel to pursue their claims (not to mention, the recognition that they in fact had a legal claim), without the possibility of a class action (or an FLSA collective action where potential plaintiffs receive notice of their ability to opt in and pursue the claim), the vast majority of employees would have no practical ability to vindicate their statutory rights in a case like this one.[17]

In Goldman, Sachs & Co., 2011 WL 1795297, at *8-*12 , a federal court in New York refused to enforce an arbitration agreement that would preclude the plaintiff from pursuing a class action in an employment discrimination case.[18]  The court held that the plaintiff's inability to pursue a class action in arbitration would prevent the vindication of statutory rights under the Federal Arbitration Act, as set forth in In re American Express Merchants' Litig., 554 F.3d at 320, and In re American Express Merchants' Litig., 634 F.3d 187, 194 (2d Cir. Mar. 8, 2011).  Following the Supreme Court's decision in AT&T Mobility, the defendant moved for reconsideration of that decision, but the Court reaffirmed its decision.  Chen-Oster v. Goldman,

---

[17]    As noted above, the court in D'Antuono decided that this issue was significant enough to be addressed on interlocutory appeal by the Second Circuit.  Though the court ordered the defendant not to enforce several aspects of its arbitration agreement and then compelled arbitration, the court stayed its order pending interlocutory review.

[18]    While noting that pattern and practice discrimination cases have generally been found to be maintainable only through class actions, the court reflected on the fallacy of this assumption and recognized the practical impediments that a plaintiff would face in attempting to pursue the claim individually.  Likewise, plaintiffs pursuing FLSA claims, with relatively low monetary values, will face substantial practical impediments in finding competent counsel, with experience in this area of law, to pursue their claims.

Sachs & Co., 2011 WL 2671813, *1 (S.D.N.Y. Jul. 7, 2011).  In its order on reconsideration, the

court explained that AT&T Mobility addressed only state law unconscionability issues, which

served as a hurdle to the FAA's broad purpose of encouraging arbitration, not the issue of

whether arbitration agreements may be enforced even where they substantively impeded

plaintiffs' ability to vindicate their statutory rights under federal arbitrability law.  Id. at *2-*3.

 In a case strikingly similar to this one, another federal court reached the same conclusion

in Sutherland v. Ernst & Young LLP, 768 F. Supp. 2d 547 (S.D.N.Y. Mar. 3, 2011).  As in this

case, the plaintiff in Sutherland sought to recover overtime under the FLSA, alleging that she had

been misclassified as an overtime-exempt employee.  Id.  The court ruled that an arbitration

agreement that would prevent her from pursuing her claim in a class action would preclude her

from vindicating her statutory rights.  The court recognized that, given the relatively modest

recovery at stake for her individually, it would be infeasible for her to pay for an attorney to

pursue an individual action, and it would be equally infeasible for an individual attorney to take

her case on a contingency basis.  Id. at 551-54.[19]

 In applying the vindication of statutory rights analysis (which as noted, is based in the

federal law of arbitrability under the FAA and survives AT&T Mobility), the court should take

note in particular in wage cases of the importance of employees being able to band together to

pursue their claims.  Without such an ability, companies may violate the law for vast numbers of

their workers (and save significantly on labor costs, and undercut their competitors who comply

with the law) with impunity, knowing at most they will only have to pay off the claims

---

[19] In Ernst & Young, the plaintiff's attorney submitted an estimate of the hours it may take to litigate the plaintiff's case individually.  Requiring an attorney to make such a conjecture does not appear a particularly fruitful exercise since, at the outset of a case, it is clearly speculative.  Some cases are litigated efficiently, and others take an enormous amount of time.  As can be seen from the history of this case so far, Robert Half is willing to spend innumerable hours of counsel's time litigating all sorts of procedural issues (including spending a year fighting Plaintiffs' counsel's ability to appear in this case).  If the Court requires some sort of estimate, Plaintiffs' counsel would be happy to oblige, knowing however that such an estimate would only be conjectural.

individually of the brave and motivated few (not to mention the few who are educated in their

rights under the wage laws) who find counsel willing to take their claims on an individual basis.

In a case such as this, where Robert Half has succeeded for so long in eluding facing any serious

challenge to its policy of classifying its staffing managers as exempt (other than in California),

the Court should (if it chooses now to reach the issue of the enforceability of the arbitration

clause) not hesitate to deny the company's motion to enforce its arbitration agreement.

## III.   CONCLUSION.

For the reasons set forth above, this Court should first address Plaintiffs' motion for

conditional certification, and allow notice to issue to similarly situated employees who may

choose to opt into this case under the FLSA. Following the issuance of notice and the opt-in

period, the Court could at that time determine which employees who have opted in may be

compelled to arbitration and which could pursue their claims in court; alternatively, following

notice, the plaintiffs may well agree to submit to arbitration (assuming the unenforceable

portions of the agreement are excised, including the truncated statute of limitations), thus

avoiding entirely the Court's need to address the motion to compel arbitration.

Alternatively, the Court should deny Robert Half's motion to compel arbitration on the

ground that it waived the right to compel arbitration by not raising it earlier in this litigation.

Finally, if the Court decides to address the motion to compel arbitration at this time on its

merits, the Court should deny the motion because allowing it would prevent untold numbers of

Robert Half staffing managers from vindicating their statutory rights under the FLSA—and

would allow the company to continue its national policy of denying overtime pay to staffing

managers, without ever facing a serious challenge, or test of the legality, of this policy.

Respectfully submitted,


/s/ Anthony L. Marchetti, Jr.
Anthony L. Marchetti, Jr., Esquire (ALM4302)
Marchetti Law P.C.
900 N. King Highway, Suite 306
Cherry Hill, NJ 08034
(856) 414 - 1800
Attorneys for Plaintiffs

Shannon Liss-Riordan, Mass. BBO No. 640716
 (pro hac vice granted)
Lichten & Liss-Riordan, P.C.
100 Cambridge Street – 20th Floor
Boston, MA 02114
DATED: August 5, 2011                          (617) 994 – 5800

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2011, a copy of the foregoing was filed electronically on all counsel of record using the District Court's CM/ECF filing system.


/s/ Anthony L. Marchetti, Jr.
Anthony L. Marchetti, Jr., Esquire (ALM4302)