<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| DAVID OPALINSKI and JAMES McCABE., | : Hon. Faith S. Hochberg, U.S.D.J. |
| Plaintiffs, | : Civil Case No. 10-2069 (FSH) (PS) |
| v. | : **OPINION & ORDER** |
| ROBERT HALF INTERNATIONAL, INC. and ROBERT HALF CORPORATION, | : Date: October 6, 2011 |
| Defendants. | : |

<u>**HOCHBERG, District Judge**</u>;

This matter comes before the Court upon Defendants' Motion to Compel Arbitration and Dismiss and Plaintiffs' Motion to Facilitate Notice to Potential Plaintiffs Informing Them of their Right to Opt-Into This Case Under the FLSA, 29 U.S.C. § 216(b). The Court has reviewed the submissions of the parties and considered the motion on the papers in accordance with Fed. R. Civ. P. 78.

**I.     BACKGROUND**[1]

Plaintiffs David Opalinski and James McCabe, former employees of Robert Half International, Inc. ("RHI"), an international staffing firm, bring this action on behalf of themselves and other individuals "who have performed duties as 'staffing managers' for [RHI]" alleging that RHI failed to pay them overtime and improperly classified them as overtime-exempt employees in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et*

---

[1] The facts set forth here are drawn from the Complaint and facts alleged in the parties' papers to which there is no dispute, except where it is specifically indicated that a fact is alleged by only one party.

1

*seq.* Compl. ¶ 1. Plaintiffs contend that according to both the "duties" and "salary basis" tests, RHI improperly classified them as overtime-exempt employees under the FLSA, thereby depriving them of time and one half overtime pay for hours worked in excess of 40 hours per week. Compl. ¶¶ 31-33.

Plaintiffs bring this as a collective action pursuant to 29 U.S.C. § 216(b) and seek to notify similarly situated current and former RHI "staffing managers" of their rights to join this action. Defendant moves to compel arbitration based on arbitration clauses in both Opalinski's and McCabe's employment agreements. Plaintiffs argue that: (1) the arbitration clauses in Opalinski's and McCabe's employment agreements are unenforceable since they would preclude vindication of statutory rights by RHI's Staffing Managers; (2) Defendant has waived its right to compel arbitration; and (3) the Court should defer ruling on Defendant's Motion to Compel Arbitration until after Plaintiffs send out notices to see which employees opt into the action and which of them have enforceable arbitration provisions in their employment agreements.

## II.   DISCUSSION

### A.   The Arbitration Clauses

Federal law presumptively favors the enforcement of arbitration agreements, *see Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 178 (3d Cir. 1999). When determining whether to grant a Motion to Compel Arbitration, the Court must consider only whether 1) a valid arbitration clause exists; and 2) whether the dispute falls within the contours of that agreement; *see Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). The Federal Arbitration Act ("FAA") provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of the contract." 9 U.S.C. § 2. The Supreme Court has made clear that "the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms," *Stolt-Nielsen v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (2010) (internal quotations omitted), and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Opalinski and McCabe signed employment agreements with slightly different arbitration clauses. Opalinski's employment agreement provides:

> Employer and Employee agree that, to the fullest extent permitted by law, <u>any dispute or claim arising out of or relating to Employee's employment, termination of employment or any provision of this Agreement</u>, whether based on contract or tort or otherwise . . . shall be submitted to arbitration pursuant to the commercial arbitration rules of the American Arbitration Association. Claims subject to arbitration shall include contract claims, tort claims, or claims relating to compensation, as well as claims based on any federal, state, or local law, statute, or regulation . . . . This Agreement shall be governed by the Federal Arbitration Act ("FAA"). The arbitrator shall apply the same substantive law that would apply if the claims were brought in a court of law. . . . To the extent permitted by law, the parties agree that neither punitive damages nor attorneys' fees may be awarded in an arbitration proceeding required by this agreement. THE PARTIES UNDERSTAND AND AGREE THAT THIS AGREEMENT CONSTITUTES A WAIVER OF THEIR RIGHTS TO A TRIAL BY JURY OF ANY OF THE ABOVE MENTIONED CLAIMS OR CONTROVERSIES.

Ex. A to Decl. of Lynne Smith in Support of Defendants' Motion to Compel Arbitration and Dismiss ("Smith Decl.") ¶ 22 (emphasis added, capitalization in original). McCabe's employment agreement provides:

> <u>Any dispute or claim arising out of or relating to Employee's employment, termination of employment or any provision of this Agreement</u>, whether based on contract or tort or otherwise . . . shall be submitted to arbitration pursuant to the commercial arbitration rules of the American Arbitration Association. This Agreement shall be governed by the United States Arbitration Act . . . . The parties agree that neither punitive damages nor attorneys' fees may be awarded in an arbitration proceeding required by this Agreement.

3

Smith Decl., Ex. B ¶ 22 (emphasis added).

Plaintiffs' claim for failure to pay overtime wages in violation of the FLSA plainly arises out of and is related to their employment with RHI and is therefore covered by the arbitration clauses in both the Opalinski and McCabe employment agreements. Plaintiffs do not contest this, but instead, argue that McCabe's arbitration clause, and possibly those of other potential plaintiffs, cannot be enforced under New Jersey law because it would preclude him and similarly situated potential class members from vindicating their statutory rights.

Plaintiffs cite *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 168 N.J. 124 (2001), in which the New Jersey Supreme Court held that an ambiguous arbitration clause in an employment agreement will not be read to apply to a plaintiff's statutory claims without "some concrete manifestation of the employee's intent as reflected in the text of the agreement itself." *Id.* at 135. However, *Garfinkel* is easily distinguishable from this case. In *Garfinkel*, the arbitration clause in plaintiff's employment agreement only applied to claims arising from the employment agreement itself leading the court to find that the "language suggests that the parties intended to arbitrate only those disputes involving a contract term, a condition of employment, or some other element of the contract itself." *Id.* at 134. Here, Plaintiffs' arbitration clauses clearly apply to claims arising out of or relating to Plaintiffs' *employment*, not just their employment agreements. Furthermore, as Defendants point out, Plaintiffs ignore the decision by the New Jersey Supreme Court the following year in *Martindale v. Sandvik*, 173 N.J. 76 (2002), in which that court distinguished *Garfinkel*, holding that no explicit reference to statutory claims in an arbitration clause is necessary for that clause to apply to statutory claims. *Id.* at 96. The *Martindale* court found that plaintiff's arbitration clause in that case, which is similar to the clauses at issue in this case, was sufficiently broad to reasonably encompass plaintiff's statutory

4

causes of action. *Id*; *see also Williams v. Wash. Mut. Bank*, No. 07-5559(JAG), 2008 U.S. Dist. LEXIS 104949, at *12-13 (D.N.J. Dec. 29, 2008) (agreement to arbitrate "[a]ny and all disputes that involve or relate in any way to my employment (or termination of employment)" applies to plaintiff's statutory New Jersey Conscientious Employee Protection Act claim); *Blumert v. Wells Fargo & Co.*, No. A-5147-09T1, N.J. Super. Unpub. LEXIS 2199, at *9-12 (N.J. Sup. Ct. Aug. 15, 2011) (compelling arbitration of plaintiff's statutory claims, finding them covered by an arbitration clause encompassing "any and all claims or controversies arising out of or related to my . . . employment, or termination" that did not specifically mention statutory claims).

Next, Plaintiffs rely on a series of cases that they argue stand for the proposition that arbitration clauses that prohibit class claims should not be enforced if plaintiffs would not be able to vindicate the statutory rights underlying those claims in the absence of a class action. Plaintiffs argue that both *In re American Express Merchants' Litig.*, 554 F.3d 187 (2d Cir. 2009) and *Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006) recognize that certain types of claims would not be brought unless plaintiffs were permitted to bring them as a class. Plaintiffs argue based on these and subsequent decisions that Plaintiffs' FLSA claims are claims of low monetary value that will largely not be brought in the absence of a class action and that, since Defendants argue that class arbitration should not be permitted here, the Court should decline to enforce the arbitration clauses in Plaintiffs' employment agreements.

This entire argument presupposes that the arbitration clauses at issue prohibit class arbitration when, in fact, the arbitration clauses are clearly silent on the issue of class arbitration. The Third Circuit has held that "[w]here contractual silence is implicated, 'the arbitrator and not a court should decide whether a contract [was] indeed silent' on the issue of class arbitration,' and 'whether a contract with an arbitration clause forbids class arbitration.'" *Vilches v. The*

*Travelers Cos.*, 413 Fed.Appx. 487, 492 (3d Cir. 2011) (quoting *Stolt-Nielsen*, 130 S. Ct. at 1771-72).  In *Vilches*, because the arbitration clause at issue "was entirely silent on whether the parties had a right to proceed through class or collective arbitration," the Third Circuit referred the question of whether class arbitration was agreed upon to the arbitrator.  *Vilches*, 413 Fed.Appx. at 492.  While RHI argues, and Plaintiffs appear to agree, that *Stolt-Nielsen* prohibits class arbitration in any case in which the arbitration clause is silent on the issue of class arbitration, the Supreme Court did not make such a broad holding.  Rather, the *Stolt-Nielsen* court held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so," and found that class arbitration was not permitted in that case because the parties had specifically stipulated that they had reached no agreement on that issue.  *Stolt-Nielsen*, 130 S. Ct. at 1775.  Because Plaintiffs' vindication of statutory rights argument is premised on the preclusion of class arbitration of their claims against RHI, and the issue of whether class arbitration is permitted has not yet been decided and is an issue for the arbitrator, it would be premature for this Court to address that argument.[2]

Finally, Plaintiffs briefly argue that the arbitration clauses in Plaintiffs' employment agreements are invalid because both they and the remainder of the contract contain unenforceable provisions.  Both Opalinski's and McCabe's employment agreements provide that "no claim against . . . [RHI] shall be valid if asserted more than six months after Employee's Termination, and [the employee] waives any statute of limitations to the contrary."  Smith Decl., Ex. A. ¶ 18 & Ex. B ¶ 18.  McCabe's employment agreement provides that "neither punitive

---

[2] There has been no indication that the value of Plaintiffs' claims prevents them from being able to vindicate their statutory rights on an individual basis and the Court notes that it would be difficult for Plaintiffs to make such a showing given the fact that they can recover fees and costs under the FLSA.

6

damages nor attorneys' fees may be awarded in an arbitration proceeding required by this Agreement."  Smith Decl., Ex. B ¶ 22.  Opalinski's employment agreement provides that "[t]o the extent permitted by law, the parties agree that neither punitive damages nor attorneys' fees may be awarded in an arbitration proceeding required by this Agreement."  Smith Decl., Ex. A ¶ 22.

The Court need not determine whether the requirement that claims be brought within six months of the employee's termination is enforceable, because, even if it is not, that provision can be severed from the agreement and the agreement to arbitrate can be enforced.  *See Buckeye Check Cashing, Inc., v. Cardegna,* 546 U.S. 440, 445 ("as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract"); *see also Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2778 (2010) ("in an employment contract many elements of alleged unconscionability applicable to the entire contract (outrageously low wages, for example) would not affect the agreement to arbitrate alone").  Given that Plaintiffs' employment agreements actually contain severability clauses, which makes clear that the parties intended for the agreements to be enforced even if specific provisions are found to be invalid, Smith Decl. Ex. A. ¶ 17 & Ex. B ¶ 18, any unenforceable provision of the agreements can be severed.  *See Kaneff v. Delaware Title Loans, Inc*., 587 F.3d 616, 625 (3d Cir. 2009) (prohibition on recovery of attorney's fees in arbitration was unenforceable, but the "provision . . . is severable pursuant to the severability clause of the agreement").

The provisions limiting Plaintiffs' recovery of fees can also be severed and therefore do not disturb the Court's conclusion that the parties agreed to arbitrate claims such as the one asserted by Plaintiffs.  Defendant admits that the fee limitation in McCabe's employment agreement is unenforceable with respect to FLSA claims, since the FLSA specifically authorizes

7

attorneys' fees for prevailing plaintiffs. However, the Third Circuit made clear in *Spinetti v. Services Corp. Int'l*, 324 F.3d 212 (3d Cir. 2003) that such a fee limitation in an arbitration clause that directly contradicts a statutory fee provision "can be severed without disturbing the primary intent of the parties to arbitrate their disputes." *Id.* at 214 (internal quotations omitted).

Therefore, the Court finds that Plaintiffs' arbitration clauses are valid and clearly apply to their FLSA claims.

**B.     Waiver of Right to Compel Arbitration**

Plaintiffs assert that RHI waived its right to compel arbitration based on the following arguments: (1) that RHI did not declare its intent to move to compel arbitration until May 2011 (over a year after this action was filed); (2) that RHI failed to note that the named Plaintiffs signed agreements containing arbitration clauses in its initial disclosures; (3) that RHI failed to state that it would seek to compel arbitration in the parties' original Joint Discovery Plan (though there is no dispute that RHI did state this intention in the parties' second Joint Discovery Plan); and (4) because RHI engaged in lengthy motion practice in contesting the admission of Plaintiffs' counsel *pro hac vice*. RHI counters that it has not waived its right to compel arbitration because: it pleaded arbitration as an affirmative defense in its Answer; it has not conducted any litigation on the merits; and it has not taken any discovery.

"Consistent with the strong preference for arbitration in federal courts, waiver is not to be lightly inferred, and waiver will normally be found only where the demand for arbitration came long after the suit commences and when both parties had engaged in extensive discovery." *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068-69 (3d Cir. 1995) (internal quotations and citations omitted). Following *PaineWebber*, the Third Circuit made clear that "a party waives the right to compel arbitration only in the following circumstances: when the parties have

8

engaged in a lengthy course of litigation, when extensive discovery has occurred, and when prejudice to the party resisting arbitration can be shown." *Great Western Mortgage Corp. v. Peacock*, 110 F.3d 222, 233 (3d Cir. 1997) (emphasis added).

The Third Circuit has stated that "'prejudice is the touchstone for determining whether the right to arbitrate has been waived' by litigation conduct," *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 222 (3d Cir. 2007) (quoting *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 925 (3d Cir. 1992)), and has set forth "a nonexclusive list of factors relevant to the prejudice inquiry." *Id.* The *Hoxworth* factors are:

> [1] the timeliness or lack thereof of a motion to arbitrate . . . [; 2] the degree to which the party seeking to compel arbitration has contested the merits of the opponent's claims; [3] whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; [4] the extent of its non-merits practice; [5] its assent to the court's pretrial orders; and [6] the extent to which both parties have engaged in discovery.

*Hoxworth*, 980 F.2d at 926-27 (internal citations omitted). In applying the *Hoxworth* factors to this case, the Court notes that "not all the factors need to be present to justify a finding of waiver, and the waiver determination must be based on the circumstances and context of the particular case." *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 209 (3d Cir. 2010) (internal quotations omitted).

### 1. The Timeliness of RHI's Motion

RHI informed Plaintiffs of its intent to file a motion to compel arbitration in May 2011, just over a year after the case was filed, and filed its motion on July 1, 2011, over 14 months after the case was filed. RHI's delay exceeds the delay in *Hoxworth* (11 months) and in cases where no waiver was found. *See Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 598 (3d Cir.

2004) (38 days); *Wood v. Prudential Ins. Co. of America*, 207 F.3d 674, 680 (3d Cir. 2000) (1½ months); *PaineWebber*, 61 F.3d at 1069 (2 months).

However, the Third Circuit, in *Nino*, acknowledged that the movant's offered explanation of its delay might merit consideration. 609 F.3d at 210. RHI claims that it moved to compel arbitration immediately after the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) changed the law at issue in this case. In *Concepcion*, the Supreme Court held that the FAA preempts state law that forces class arbitration on parties who have not consented to it. *Id.* at 1750-53. The court found that that the FAA preempted California's *Discover Bank* rule, which found class waivers in consumer arbitration agreements to be unconscionable, when that rule was used by the Ninth Circuit to affirm a denial of AT&T's motion to compel arbitration. *Id.* RHI contends that *Concepcion*, along with *Stolt-Nielsen*, changed the law regarding class arbitration, such that Plaintiffs in this case must arbitrate their claims individually and not as a class. Plaintiffs argue that *Concepcion* does not change the fact that *federal* law can still be used to find arbitration clauses with class waivers unenforceable on the basis of precluding the vindication of statutory rights. This Court need not decide whether *Concepcion* effected the dramatic change in the legal landscape that RHI argues it did, though the Third Circuit has noted that *Concepcion* worked "a change in the law" on this issue of whether state law can impose class arbitration despite a contractual agreement for individualized arbitration. *Litman v. Cellco P'ship*, No. 08-4103, 2011 WL 3689015, at *4-5 (3d Cir. Aug. 24, 2011). Because RHI offers an arguably reasonable basis for its delay, this Court cannot say that this factor weighs in favor of a finding of waiver, and therefore considers this factor to be neutral.

### 2. The Degree to Which RHI Has Contested the Merits of Plaintiffs' Claims

RHI did not engage in motion practice regarding the merits of Plaintiffs' FLSA claim before moving to compel arbitration; therefore, this factor weights against a finding of waiver. *See Nino*, 609 F.3d at 210-11.

### 3. Whether RHI Informed Plaintiffs of its Intent to Seek Arbitration

RHI raised mandatory arbitration as an affirmative defense in its Answer, thereby putting Plaintiffs on notice that it might seek to compel arbitration. As a result, this factor certainly weighs in RHI's favor, however, "[i]n the waiver context, where prejudice to the non-movant is the key, an initial invocation of the defense of arbitration becomes less significant the longer and more actively a party litigates after having made that initial invocation without making any further mention of arbitration." *Nino*, 609 F.3d at 211-12. Here, RHI waited approximately a year between its invocation of arbitration as an affirmative defense and its notification to Plaintiffs that it would, in fact, move to compel arbitration, during which the parties litigated RHI's opposition to the *pro hac vice* admission of Plaintiffs' counsel. The Court finds that this factor weighs against a finding of waiver, however, due to the length of time between RHI's assertion of the affirmative defense of arbitration and the filing of the actual motion to compel, that weight is somewhat diminished.

### 4. Extent of Non-Merits Motion Practice

The only non-merits motion practice in which the parties have engaged is the disputed *pro hac vice* admission of Plaintiffs' counsel, however, that motion practice has been significant: RHI opposed Plaintiffs' *pro hac vice* motion, the parties conducted oral argument on the motion, Magistrate Judge Arleo granted the motion, and RHI appealed Judge Arleo's order to Judge

Wigenton, resulting in a stay of proceedings until Judge Wigenton affirmed the *pro hac vice* admission of Plaintiff's counsel. Both the *Nino* and *Hoxworth* courts found the movant's non-merits motion practice to be significant where the movant's inadequate discovery responses forced its opponent to file motions to compel discovery. *Nino*, 609 F.3d at 212; *Hoxworth*, 980 F.3d at 925-26. The *Nino* court found that the consequence of such motion practice was "to require [non-movant] to devote substantial amounts of time, effort, and money in prosecuting the action." *Nino*, 609 F.3d at 212 (internal quotations omitted). Here, RHI did not engage in motion practice regarding discovery as in *Nino* and *Hoxworth*; indeed, RHI has not participated in any discovery in this case. Additionally, as RHI points out, its opposition to Plaintiffs' counsel's *pro hac vice* admission would have been brought regardless of whether the case was before the Court or an arbitrator as Plaintiff's counsel had previously employed a former attorney of counsel representing RHI in a similar FLSA action in Massachusetts. RHI also argues that part of the delay in moving to compel was caused by the stay this Court imposed while Judge Wigenton considered RHI's appeal of Judge Arleo's order granting Plaintiff's *pro hac vice* motion. While RHI's appeal of Judge Arleo's order did result in a stay of several months, RHI still could have moved to compel arbitration in the three month period between the filing of the complaint and the Court's institution of the stay. Because RHI chose not to seek to compel arbitration then, but instead to oppose Plaintiffs' *pro hac vice* motion, this factor weighs in favor of a finding of waiver.

### 5. Assent to the Court's Pretrial Orders

In *Nino*, the Third Circuit found that the movant's attendance at ten pretrial conferences and its failure to object to any pretrial orders based upon its intent to compel arbitration weighed in favor of a finding of waiver. *Nino*, 609 F.3d at 212-23. Here, RHI attended one scheduling

conference and oral argument and complied with the Court's first Scheduling Order by submitting the parties' first Joint Discovery Plan before indicating in the parties' second Joint Discovery Plan, filed on May 18, 2011, that it would move to compel arbitration. The Court finds this factor to weigh slightly in favor of a finding of waiver, because, although RHI never objected to the Court's pretrial orders based upon its intent to seek arbitration, it did not attend many pretrial conferences nor did it assent to many pretrial orders before indicating its intent to move to compel arbitration.

### 6.     Extent to Which Both Parties Engaged in Discovery

The extent to which a party moving to compel arbitration has engaged in discovery has been a very significant factor in determining the issue of waiver. *See PaineWebber*, 61 F.3d at 1068-69 ("waiver will normally be found only where the demand for arbitration came long after the suit commences and when both parties had engaged in extensive discovery") (internal quotations and citations omitted); *see also Nino*, 609 F.3d 212-13 (finding that this factor weighs "firmly" in favor of finding waiver when the parties "engaged in significant discovery during" during a 15-month period before the motion to compel); *Ehleiter*, 482 F.3d at 222-25 (finding waiver based on parties engaging in "extensive discovery" including depositions, exchanges of interrogatories, document requests, and expert reports); *Hoxworth*, 980 F.3d at 925-27 (finding waiver in party based on the fact that movant took depositions and responded to discovery requests). The parties do not dispute that there has been no discovery to date in this matter, and as RHI points out, Plaintiffs do not cite a single case in which the Third Circuit has found a waiver of the right to compel arbitration where the movant did not engage in discovery. Due to the significance of this factor in the case law and the fact that the parties here have not yet

13

engaged in any discovery, the Court finds that this factor weighs heavily against a finding of waiver.

       **7.**    **Summary**

Two of the *Hoxworth* factors weigh in favor of a finding of waiver – the extent of RHI's non-merits motion practice and its assent to the Court's pretrial orders, though this factor only weighs slightly in favor of waiver; three weigh against a finding of waiver – RHI has not contested the merits of Plaintiffs' claim, it has not engaged in discovery, and it did raise arbitration as an affirmative defense in its answer, though the weight of this factor is diminished by the length of time between the answer and the motion to compel; and one is neutral – the timeliness of RHI's motion. Therefore, while RHI's actions have led to Plaintiffs investing time and money in litigating this case, Plaintiffs do not demonstrate sufficient prejudice to warrant a finding that RHI has waived its right to compel arbitration. Controlling Third Circuit law states that "a party waives the right to compel arbitration <u>only</u> in the following circumstances: when the parties have engaged in a <u>lengthy course of litigation</u>, when <u>extensive discovery</u> has occurred, and when <u>prejudice</u> to the party resisting arbitration can be shown." *Great Western Mortgage Corp.*, 110 F.3d at 233 (emphasis added). Here, the parties have clearly not engaged in extensive discovery and Plaintiffs point to no precedent supporting a finding of waiver in the absence of discovery.

    **C.**    **Plaintiffs' Motion to Facilitate Notice**

Plaintiffs have filed a motion to facilitate notice to similarly situated RHI employees so that may join Plaintiffs' claim pursuant to section 216(b) of the FLSA. Plaintiffs argue that the Court can and should grant their motion to facilitate notice before addressing RHI's motion to compel arbitration so that the Court can examine the arbitration clauses in the agreements of all of the

parties that opt-in and decide which, if any, would be required to submit their claims to arbitration. Plaintiffs argue that RHI, after having waited over a year to seek arbitration, will not be prejudiced by waiting for a notice and opt-in period and that such a period will further the broad remedial purpose of the FLSA. However, after determining that the arbitration clauses in both Opalinski's and McCabe's employment agreements require them to arbitrate their FLSA claim and that RHI has not waived its right to compel arbitration, this Court sees no reason to permit Plaintiffs to continue to litigate this action in this forum.[3] *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (holding that the FAA "requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums" and "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed"). Moreover, Plaintiffs do not cite any cases in which a court deferred ruling on a pending motion to compel arbitration in order to permit a party to initiate notice and an opt-in period.

---

[3] The cases cited by Plaintiffs in support of their argument are all inapposite: *See Rafeedie v. L.L.C., Inc.*, No. 10-cv-00743, Order at 5 (W.D. Tex. May 9, 2011) (defendants suggested there were "possible arbitration agreements," but did not move to compel arbitration); *Davis v. NovaStar Mortg., Inc.*, 408 F. Supp. 2d 811, 818 (W.D. Mo. 2005) (defendant had not moved to compel arbitration); *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 811 (S.D. Tex. 2003) (defendant "raised issues" about "newly signed" arbitration agreements in opposition to conditional certification, but did not move to compel arbitration); *Ali v. Sugarland Petroleum*, 2009 U.S. Dist. LEXIS 118829, at *12-13 (S.D. Tex. Dec. 22, 2009) (defendant objected to certification because some opt-ins signed arbitration agreements, but did not move to compel arbitration); *Whittington v. Taco Bell of Am., Inc.*, 2011 U.S. Dist. LEXIS 55292, at *9 (D. Colo. May 10, 2011) ("[F]or the one party that is before this Court, the Named Plaintiff, they apparently *do not have an executed arbitration agreement* . . . .") (internal quotations omitted).

**III.     CONCLUSION**

For the reasons stated above, **IT IS** on this 6th day of October 2011

**ORDERED** that Defendants' Motion to Compel Arbitration and Dismiss [docket # 54] is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' Motion to Facilitate Notice to Potential Plaintiffs Informing Them of their Right to Opt-Into This Case Under the FLSA, 29 U.S.C. § 216(b) [docket # 55] is **DENIED AS MOOT**.

/s/ Faith S. Hochberg_____
Hon. Faith S. Hochberg, U.S.D.J.