<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DAVID OPALINSKI AND JAMES McCABE, on behalf of themselves and all others similarly situated,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**ROBERT HALF INTERNATIONAL INC. AND ROBERT HALF CORPORATION,**<br><br>*Defendants.* | **Civil Action No. 10-2069**<br><br>**OPINION** |

Before the Court is Defendant Robert Half International Inc. ("RHI") and Robert Half Corporation's (collectively, "Defendants") motion to dismiss. Dkt. No. 98. Defendants' arguments are consistent with Third Circuit and Supreme Court law. As such, the Court **GRANTS** Defendants' motion.

**I.  FACTS**

RHI is a staffing firm with hundreds of offices in the United States and other countries worldwide. Compl. ¶ 12, Dkt. No. 1. Plaintiffs David Opalinski and James McCabe ("Plaintiffs") are former employees of RHI's Benchmark division in New Jersey. Smith Decl. ¶ 2, Dkt. No. 54-2. Both Opalinski and McCabe signed employment agreements (referred to herein as the "Agreements") that include arbitration clauses. Smith Decl. Exs. A & B., Employment Agreements at 3-10, 11-18, Dkt. No. 54-2. Section 22 of McCabe's Agreement provides the following:

> Any dispute or claim arising out of or relating to Employee's employment, termination of employment or any provision of this

1

> Agreement, whether based on contract or tort or otherwise (except for any dispute involving alleged breach of the obligations contained in Sections 8, 9, 10, 11, or 13 hereof) shall be submitted to arbitration pursuant to the commercial arbitration rules of the American Arbitration Association. This Agreement shall be governed by the United States Arbitration Act. An arbitration award rendered pursuant to this Section shall be final and binding on the parties and may be submitted to any court of competent jurisdiction for entry of a judgment thereon. The parties agree that neither punitive damages nor attorneys' fees may be awarded in an arbitration proceeding required by this Agreement.

Smith Decl. Ex. A, McCabe's Employment Agreement at 17, Dkt. No. 54-2.

Opalinski's Agreement, which he signed on February 11, 2002, likewise provides:

> Employer and Employee agree that, to the fullest extent permitted by law, any dispute or claim arising out of or relating to Employee's employment, termination of employment or any provision of this Agreement, whether based on contract or tort or otherwise (except for any dispute involving alleged breach of the obligations contained in Sections 8, 9, 10, 11 or 13 hereof) shall be submitted to arbitration pursuant to the commercial arbitration rules of the American Arbitration Association. Claims subject to arbitration shall include contract claims, tort claims, or claims related to compensation, as well as claims based on any federal, state or local law, statute, or regulation, including but not limited to claims arising under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, The Americans with Disabilities Act, the California Fair Employment and Housing Act (for California employees), and comparable equal opportunity statutes for employees in other states. However, claims for unemployment compensation, workers' compensation, and claims under the National Labor Relations Act shall not be subject to arbitration. This Agreement shall be governed by the Federal Arbitration Act ("FAA"). The arbitrator shall apply the same substantive law that would apply if the claims were brought in a court of law. The arbitrator shall also prepare a written decision containing the essential findings and conclusions on which the decision is based. The costs and fees of the arbitrator shall be born[e] by the Employer. An arbitration award rendered pursuant to this Section shall be final and binding on the parties and may be submitted to any court of competent jurisdiction for entry of a judgment thereon. To the extent permitted by law, the parties agree that neither punitive damages nor attorneys' fees may be awarded in an arbitration proceeding required by this Agreement. THE

> PARTIES UNDERSTAND AND AGREE THAT THIS AGREEMENT CONSTITUTES A WAIVER OF THEIR RIGHTS TO A TRIAL BY JURY OF ANY OF THE ABOVE MENTIONED CLAIMS OR CONTROVERSIES.

Smith Decl. Ex. A., Opalinski's Employment Agreement at 9, Dkt. No. 54-2.

On April 3, 2010, Plaintiffs filed a complaint in this Court alleging that RHI had misclassified them as overtime-exempt employees in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). Compl. ¶ 1. They sought to recover overtime pay allegedly due to them as individuals. Id. ¶ 30. They also sought to pursue their claims as a collective action, allegedly including thousands of Robert Half International's current and former staffing managers nationwide. Id. ¶ 1; Mot. to Facilitate Notice to Potential Pls. at 7, Dkt. No. 55-1.

On July 1, 2011, RHI moved to compel individual arbitration of Plaintiffs' claims. Mot. to Compel Arb., Dkt. No. 54. On October 6, 2011, the Court granted RHI's motion to compel arbitration. Op. & Order, Dkt. No. 67. On May 31, 2012, the arbitrator issued a "partial final award," ruling that she was authorized to conduct class arbitration. Liss-Riordon Decl. Ex. 1, Arb. Award at 11, Dkt. No. 71-2. The arbitrator accepted Plaintiffs' argument that, by agreeing to arbitrate "any dispute or claim," RHI had agreed to arbitrate what she termed "FLSA class claims." Id. at 5.

On June 29, 2012, RHI filed a motion in this Court to vacate the arbitrator's award. Mot. to Vacate Arb. Award, Dkt. No. 68. On December 3, 2012, the Court denied it. Op. & Order, Dkt. No. 73. On December 5, 2012, RHI appealed to the United States Court of Appeals for the Third Circuit. Notice, Dkt. No. 74. On appeal, RHI argued that this Court, rather than the arbitrator, should decide whether the Agreements provide for class arbitration. On July 30, 2014, the Third Circuit agreed, ruling that the arbitrator's award should have been vacated and remanding the case

for this Court "to determine whether [Plaintiffs'] employment agreements call for classwide arbitration." Opalinski v. Robert Half Int'l Inc., 761 F.3d 326, 335 (3d Cir. 2014).

Defendants now move for an order (1) confirming that the Plaintiffs' arbitration agreements do not call for class arbitration and (2) dismissing this action. For the reasons below, the Court **GRANTS** the motion.

## II. LEGAL STANDARD

When determining whether agreements call for class arbitration, the Court's standard of review is *de novo*, without any deference to the arbitrator's vacated partial final award. See ConocoPhillips, Inc. v. Local 13-0555 United Steel Workers, 741 F.3d 626, 634 (5th Cir. 2014) (district court owes no deference to arbitrator's decision that exceed arbitrator's authority); see also Town & Country Salida, Inc. v. Dealer Comp. Servs., Inc., 521 F. App'x 470, 464 (6th Cir. 2013).

In considering a Rule 12(b)(6) motion to dismiss more generally, the Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id.

The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**III.   ANALYSIS**

Defendant argues the case should be dismissed for three main reasons: (1) the Federal Arbitration Act ("FAA") does not permit an arbitrator to conduct class arbitration unless the parties agree to participate; (2) the absence of any reference to class arbitration in the Agreements weighs heavily in favor of the conclusion that the parties have not agreed to it; and (3) Plaintiffs fail to show an implicit agreement to participate in class arbitration. These arguments prevail.

**A. An Arbitrator May Not Conduct Class Arbitration Unless the Parties Consent**

The Supreme Court has clearly determined that party consent is a basic element of interpreting arbitration agreements under the FAA. Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 681 (2010) ("While the interpretation of an arbitration agreement is generally a matter of state law, the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'") (citations omitted). In keeping with this basic precept of consensual arbitration, parties are free to structure their arbitration agreements as they see fit. Id. at 683. When interpreting particular arbitration agreements, courts should seek to give effect to the contractual rights and expectations of the parties. Id. at 682. "From these principles, it follows that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." Id. at 684 (emphasis in original). While it is possible for parties to implicitly agree to authorize class-action arbitration, such an implicit agreement "is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate." Id.

Mere agreement to arbitrate is insufficient to infer a party's consent to class arbitration because of the "fundamental changes brought about by the shift from bilateral arbitration to class-action arbitration." Id. at 686. These fundamental changes include allowing the arbitrator to

5

resolve "many disputes between hundreds or perhaps even thousands of parties" instead of "a single dispute between the parties," surrendering the presumption of privacy and confidentiality, adjudicating the rights of absent parties, and raising the stakes of litigation while greatly limiting the scope of judicial review.  Id. at 686-687; see also AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1751-52 (2011) (noting that class arbitration is fundamentally different from "arbitration as envisioned by the FAA" because it sacrifices the informality of arbitration, requires procedures sufficient to protect the due process rights of absent class members, and increases the stakes for defendants).

Therefore, arbitrators may not conduct class arbitration unless the parties agreed to participate.  The Agreements here do not explicitly authorize classwide arbitration.  Thus, this matter hinges on whether the parties implicitly agreed to classwide arbitration.

### B. Absence of Reference to Class Arbitration Weighs Against Inferring Acceptance

Defendants argue that the absence of any reference to class arbitration weighs against inferring acceptance.  This is correct.

Third Circuit law weighs against finding implicit consent if there is no explicit mention of classwide arbitration whatsoever.  See Quilloin v. Tenet HealthSys. Phila., Inc., 673 F.3d 221, 232 (3d. Cir. 2012) ("[s]ilence regarding class arbitration generally indicates a prohibition against class arbitration"), distinguished in part on other grounds by Opalinski, 761 F.3d at 331; Johnson v. West Suburban Bank, 225 F.3d 366, 377 n.4 (3d. Cir. 2000) (noting that it "appears impossible" to pursue class actions in arbitral forums unless the arbitration agreement "contemplates such a procedure").  Inferring agreement to arbitrate on a classwide basis is disfavored where the arbitration agreement is silent on the point.

Many other courts agree. In analyzing an arbitration agreement, the Sixth Circuit refused to infer consent to classwide arbitration primarily because the agreement did not mention classwide arbitration. See Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett, 734 F3d. 599, 600 (6th Cir. 2013) ("The principal reason to conclude that this arbitration clause does not authorize classwide arbitration is that the clause nowhere mentions it. … [T]he agreement does not expressly exclude the possibility of classwide arbitration … [b]ut the agreement does not include it either, which is what the agreement needs to do in order for us to force that momentous consequence upon the parties here."). The Ninth Circuit endorsed similar reasoning by affirming dismissal of class claims when the arbitration agreement was silent on the issue of classwide arbitration. Eshagh v. Terminix Int'l. Co., 588 F. App'x 703, 704 (9th Cir. 2014).

Myriad district courts similarly reject classwide arbitration where the agreement does not mention class arbitration. See, e.g., Martinez v. Leslie's Poolmart, Inc., No. 14-01481, 2014 WL 5604974, at *2-6 (C.D. Cal. Nov. 3, 2014) (dismissing class claims where arbitration agreement did not mention class arbitration); Chico v. Hilton Worldwide, Inc., No. 14-5750, 2014 WL 5088240, at *12 (C.D. Cal. Oct. 7, 2014) (same); Taylor v. Am. Income Life Ins. Co., No. 13-31, 2013 WL 2087359 (N.D. Ohio May 14, 2013) (same); Porter v. MC Equities, LLC, No. 12-1186, 2012 WL 3778973, at *2-4, 8-10, 12 (N.D. Ohio Aug. 30, 2012) (same); see also Lucas v. Iasis Healthcare LLC, No. 14-942, 2014 WL 2520443, at *2 (M.D. Fla. June 4, 2014) (compelling bilateral arbitration in the absence of any language authorizing or referring to class arbitration); Smith v. BT Conferencing, Inc., No. 13-160, 2013 WL 5937313, at *5-6, 8 (S.D. Ohio, Nov. 5, 2013) (same); Anwar v. Fairfield Greenwich Ltd., 950 F. Supp. 2d 633, 637 (S.D.N.Y. 2013) (same); Lopez v. Ace Cash Express, Inc., Nos. 11-4611 & 11-7116, 2012 WL 1655720, at *7-8 (C.D. Cal. May 4, 2012) (same); Sanders v. Forex Capital Mkts., LLC, No. 11-0864 (CM), 2011

WL 5980202, at *4, 12 (S.D.N.Y. Nov. 29, 2011) (same); see also Chambers v. Groome Transp. of Ala., 41 F. Supp. 3d 1327, 1350-51, 1354 (M.D. Ala. 2014) (if plaintiffs entered into arbitration agreement, "classwide arbitration would be unavailable because the Arbitration Agreement does not expressly provide for it").

In response to Defendants' argument against inferring consent, Plaintiffs assert that many courts, including the Supreme Court in Oxford Health Plans LLC v. Sutter, 133 S. Ct. 2064 (2013), have found intent to permit classwide arbitration despite the absence of any express language to that effect. However, the issue in all but one of the cases cited by Plaintiffs—including Sutter—was whether to vacate an arbitration award. In determining whether to vacate an arbitration award, the scope of review is extremely limited. Id. at 2070 ("As we have held before, we hold again: 'It is the arbitrator's construction [of the contract] which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.' . . . The arbitrator's construction holds, however good, bad, or ugly.") (citations omitted). The issue confronting the Court here is to determine, de novo, "whether [Plaintiffs'] employment agreements call for classwide arbitration." Opalinski, 761 F.3d at 335. Almost all cases cited by Plaintiff are inapplicable to the specific legal question at issue here, concerning instead whether to vacate an arbitration award.

If anything, the Supreme Court's reasoning in Sutter supports Defendants' argument against inferring consent. The Supreme Court, noting its limited scope of review, affirmed the Third Circuit's finding that the parties were bound by the arbitrator's decision; however, Justice Kagan, writing for the majority, explicitly declined to agree with the arbitrator's underlying decision. Sutter, 133 S. Ct. at 2070 ("Nothing we say in this opinion should be taken to reflect any

agreement with the arbitrator's contract interpretation, or any quarrel with [Appellant's] contrary reading."). Moreover, Justice Alito, in a concurring opinion, stated that the arbitrator's interpretation was wrong: "If we were reviewing the arbitrator's interpretation of the contract *de novo*, we would have little trouble concluding that he improperly inferred an implicit agreement to authorize class-action arbitration from the fact of the parties' agreement to arbitrate." Id. at 2071 (internal citation and quotation omitted).[1]

Plaintiffs do cite one case that discusses a de novo interpretation of an arbitration agreement. Galakhova v. Hooters of America, Inc., No. 34-2010-73111, slip op. at 2 (Cal. Super. Ct. July 27, 2010). The California trial court's determination in Galakhova is contradicted by a pair of subsequent decisions from the California Court of Appeal. See Kinecta Alt. Fin. Solutions, Inc. v. Superior Court, 205 Cal. App. 4th 506, 518-19 (2012) (holding that the "arbitration agreement made no reference to, and did not authorize, class arbitration" so the parties "did not agree to authorize class arbitration in their arbitration agreement"); Nelsen v. Legacy Partners Residential, Inc., 207 Cal. App. 4th 1115, 1129-31 (2012) (holding that classwide arbitration is not authorized because "[n]o language evinces an intent to allow class arbitration"). Galakhova is unpersuasive here.

---

[1] Plaintiffs discuss the procedural safeguards provided by the Federal Rules of Civil Procedure and the AAA Supplementary Rules of Class Arbitration to protect absent class members from being bound without their consent, but they fail to address Justice Alito's larger concern that "at least where absent class members have not been required to opt *in*, it is difficult to see how an arbitrator's decision to conduct class proceedings could bind absent class members who have not authorized the arbitrator to decide on a classwide basis which arbitration procedures are to be used." Id. The inability of an arbitrator to bind absent class members is problematic, in Justice Alito's view, because "[c]lass arbitrations that are vulnerable to collateral attack allow absent class members to unfairly claim the benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one." Id. (emphasis in original) (internal citation and quotation omitted). By focusing on procedural safeguards such as opt out notices, Plaintiffs misunderstand and fail to distinguish Justice Alito's reasoning.

9

In short, the weight of authority holds that complete silence on the issue of classwide arbitration weighs against inferring consent. Here, the Agreements merely provide that certain disputes or claims "shall be submitted to arbitration pursuant to the commercial arbitration rules of the American Arbitration Association." Smith Decl. Exs. A & B., Employment Agreements at 9, 17. The Agreements' silence concerning classwide arbitration weighs against inferring consent to such arbitration here.

### C. Plaintiffs Fail To Show An Implicit Agreement To Participate In Class Arbitration

The language of the Agreements does not show any intent to allow class arbitration. For one, the limitation of arbitrable claims to those "arising out of or relating to" Plaintiffs' relationships with RHI is inconsistent with class arbitration.

The overtime claims of other employees do not arise out of or relate to Plaintiffs' employment, termination, or Agreement. When arbitration agreements limit claims to those arising out of the relationship between the contracting parties, as is the case here, they generally do not authorize class arbitration of absent parties' claims. See, e.g., Reed Elsevier, 734 F.3d at 599 (agreement to arbitrate claims "arising from or in connection with *this* Order," as opposed to other customers' orders, does not authorize class arbitration) (emphasis in original); Chico, 2014 WL 5088240, at *12 (arbitration agreements that refer to plaintiff in the singular and cover claims arising out of his employment do not allow class arbitration); Lucas, 2014 WL 2520443, at *2 (same); Smith, 2013 WL 5937313, at *9-10 (same). Plaintiffs fail to provide any direct support for their contention that the "arising under" language permits collective arbitration.

Defendants also argue that agreeing to arbitrate "any dispute or claim" does not authorize classwide arbitration. The cases cited above support this. In those cases, the same or similar language was contained in the arbitration agreements, but the courts still refused to infer consent

to classwide arbitration. Merely agreeing to arbitrate "any dispute or claim," without more, does not authorize collective arbitration. Again, Plaintiffs fails to provide any de novo court interpretations supporting their position that the "any dispute or claim" language evinces an intent to allow class arbitration.

Plaintiffs argue that the Agreements could have explicitly excluded the possibility of classwide arbitration. The question here is whether the Agreements evince intent to impliedly agree. Plaintiffs provide no specific language or prior interactions between the parties evincing intent to permit class arbitration. Mere absence of explicit exemption, without more, does not evince an intent to permit classwide arbitration. Plaintiffs provide nothing more.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss in its entirety. An appropriate order accompanies this opinion.

Date: November 19, 2015          /s/ *Madeline Cox Arleo*
                                 **Hon. Madeline Cox Arleo**
                                 **UNITED STATES DISTRICT JUDGE**